ANSEL HIGGINS *vs.* CARR BROTHERS COMPANY.

Cumberland.   Opinion, February 25, 1942.

*Edward B. Perry*, Portland, for plaintiff.

*Francis W. Sullivan,*

*James R. Desmond*, Portland, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

STURGIS, C. J.   In this proceeding the plaintiff, Ansel Higgins, sues his employer, Carr Brothers Company, for unpaid wages and overtime compensation alleged to be due him with liquidated damages for the period from October 24, 1938, to July 24, 1940, under the Fair Labor Standards Act of 1938, 52. Stat. 1060; U. S. C. A. Tit. 29, Chap. 8. The plea was the

general issue with a brief statement denying that the employer and employee were engaged in interstate commerce at the time embraced in the declaration and that the Fair Labor Standards Act had been violated. By consent of the parties the case was heard by the court with jury waived and with the right to except as to matters of law reserved. The plaintiff presents his Exception to the decision filed.

The Fair Labor Standards Act of 1938, approved June 25, 1938, with exceptions not here of concern, fixes the minimum hourly wage and the maximum hours of the workweek of all employees who are engaged in commerce or in the production of goods for commerce. As defined, "commerce" means interstate commerce. (Section 3(b).)

The Act provides in Section 6(a), effective October 24, 1938, that such employees shall be paid,

" (1)  during the first year from the effective date of this section, not less than 25 cents an hour,
" (2)  during the next six years from such date not less than 30 cents an hour. . . ."

And in Section 7 (a), also effective on October 24, 1938, that no employer shall employ any such employee,

" (1)  for a workweek longer than forty-four hours during the first year from the effective date of this section,
" (2)  for a workweek longer than forty-two hours during the second year from such date, or
" (3)  for a workweek longer than forty hours after the expiration of the second year from such date,

"Unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Under Section 16 (b) any employer who violates Section 6 or 7 of the Act is "liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid

overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." In addition to any judgment awarded, the plaintiff or plaintiffs are entitled to the allowance of a reasonable attorney's fee and costs of the action.

Carr Brothers Company is a local corporation conducting a wholesale fruit, grocery and produce business in Portland. It buys its merchandise from local producers and from dealers in other states, has it delivered by truck and rail, unloaded into its store and warehouse and from there sells and distributes it to the retail trade. While some of the produce and fruit is processed, much of it sold in the condition in which it is received. The corporation owns all of its merchandise and makes its own deliveries. It makes no sales on commission nor on order with shipments direct from the dealer or producer to the retail purchaser. When the wage and hour provision of the Fair Labor Standards Act went into effect the corporation was selling and delivering its merchandise not only to the local trade in Maine but also to retailers in various cities and towns in New Hampshire and the record indicates that a somewhat substantial part of what it bought in other states was intentionally destined for final transportation into New Hampshire after a temporary deposit or rest in its store or warehouse in Portland. At the end of ten weeks, however, this out-of-state trade was discontinued, and thereafter all sales and deliveries were solely to retailers in Maine.

The plaintiff, Ansel Higgins, was at first employed by Carr Brothers Company as night shipper, serving customers, putting up all orders and loading trucks including those used for out-of-state deliveries. He worked sixty-six hours a week for a wage of $16.00 in this service for the ten weeks in which trade in New Hampshire continued. The court below found and ruled that for this period the employee was entitled to the benefits of Section 6 (a), 7 (a) and 16 (b) of the Act and the defendant employer was liable to him for unpaid minimum wages and overtime compensation computed to be $31.70, together with

liquidated damages of equal amount, a $100 counsel fee and altogether $163.40. Standing alone this decision is not attacked mathematically or otherwise. It seems to have been fully warranted. The merchandise which Carr Brothers Company purchased in other states intended to be shipped into Maine, here rest temporarily only, and later go forward in transportation to New Hampshire remained in the "current" of interstate commerce, until it reached its ultimate destination. The continuity of the movement of the goods was never broken in Maine and did not then cease. *Swift & Co.* v. *United States,* 196 U. S., 375, 25 S. Ct., 276, 49 Law Ed., 518; *Stafford* v. *Wallace,* 258 U. S., 495, 42 S. Ct., 397, 66 Law Ed., 735, 23 A. L. R., 229; *Board of Trade of City of Chicago* v. *Olsen,* 262 U. S. 1, 35, 43 S. Ct., 470, 67 Law Ed., 839; *Binderup* v. *Pathe Exchange,* 263 U. S., 291, 44 S. Ct., 96, 68 Law Ed., 308. It is clear on the record, we think, that, the plaintiff employee, for the period that he was actively and regularly employed in putting up orders and loading trucks with merchandise for New Hampshire delivery, was engaged in commerce as defined by Section 3 (b) of the Fair Labor Standards Act and entitled to receive the benefits of the applicable provisions of the law.

The employee directs his exception to the denial, in the trial court, of his claim for unpaid minimum wages and overtime compensation alleged to be due him under Section 6 (a) and 7 (a) of the Fair Labor Standards Act during his further employment by the defendant corporation from early in January, 1939, until July 24, 1940, when he quit work. His employer had then discontinued its interstate sales and deliveries in New Hampshire and was carrying on a strictly local wholesale business. For the first three months of this period the employee continued to work as night shipper, putting up orders and loading trucks, but all for local delivery to retail dealers in Maine. During his subsequent employment he drove a light truck distributing merchandise to the same local trade. The employer was still buying in out-of-state markets but when the the shipments were unloaded into its store and warehouse in

Portland the merchandise was owned and held by it there solely for local sales and deliveries to domestic retail dealers for direct resale to consumers. With exceptions of minor importance and not here controlling, this status continued without interruption. The merchandise "was not held, used or sold by defendants in relation to any further transactions in interstate commerce and was not destined for transportation to other states." Its interstate movement had ended. Subsequent local sales and deliveries were purely intrastate activities and in these this employee was solely engaged. *Schechter Poultry Corp.* v. *United States,* 295 U. S., 495, 543, 55 S. Ct., 837, 79 Law Ed., 1570; 97 A. L. R., 947; *Atlantic Coast Line R. Co.* v. *Standard Oil Co.,* 275 U. S., 257, 267, 48 S. Ct., 107, 72 Law Ed., 270; *Public Utilities Commission* v. *Landon,* 249 U. S., 236, 245, 39 S. Ct., 268, 63 Law Ed., 577.

The employee, through counsel, argues, however, that, even though he was engaged solely in intrastate commerce in the latter periods of his employment by the defendant corporation, his hours and wages so adversely affected interstate commerce that they became subject to federal control under the Fair Labor Standards Act, and for violation thereof, recovery may be had as there provided. This contention did not prevail in the trial court and cannot here. It is, of course, a familiar principle that Congress may not only regulate transactions which are a part of interstate commerce but may also protect that commerce from injuries which result from the conduct of those engaged in intrastate operations. But it is elementary that in order to subject intrastate transactions to federal control they must *directly* affect interstate commerce and if their effect is merely *indirect* the transactions remain within the "domain of state power." It is well settled now that the hours and wages of persons employed in purely intrastate commerce have no direct relation to interstate commerce and an attempt to fix such hours and wages by regulation is not a valid exercise of federal power. *Schechter Poultry Corp.* v. *United States,* supra. See *Labor Relations Board* v. *Jones & Laughlin S. Corp.,* 301 U. S.

1, 29, 57 S. Ct., 615, 81 Law Ed., 893; *Carter* v. *Carter Coal Co.,* 298 U. S., 238, 309, 56 S. Ct., 855, 80 Law Ed., 1160; *United States* v. *Butler,* 297 U. S. 1, 75, 56 S. Ct., 312, 80 Law Ed., 477; 102 A. L. R., 914.

In *Schechter Poultry Corp.* v. *United States,* supra, the question of the right of federal control over the wages and hours of the defendant's employees under the Live Poultry Code, 48 Stat., 195, 196; 15 U. S. C. A., Sec. 703, was presented for determination. On a finding that the employees were handling poultry after it was received in interstate commerce into the defendant's slaughter house markets solely for sale to local retailers for resale, it was held that the employees were engaged in purely intrastate commerce, their hours and wages had no direct relation to interstate commerce, and the attempt through the Code to fix the hours and wages was not a valid exercise of federal power. In delivering the opinion of the Court, Mr. Chief Justice Hughes said:

"In determining how far the federal government may go in controlling intrastate transactions upon the ground that they 'affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects. . . . where the effect of intrastate transactions upon interstate commerce is merely indirect such transactions remain within the domain of state power. If the commerce clause was construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people, and the authority of the state over its domestic concerns would exist only by sufferance of the federal government. Indeed, on such a theory, even the development of the state's commercial facilities would be subject to federal control. . . .

"It is not the province of the Court to consider the economic advantages or disadvantages of such a central-

ized system. It is sufficient to say that the Federal Constitution does not provide for it. Our growth and development have called for wide use of the commerce power of the federal government in its control over the expanded activities of interstate commerce and in protecting that commerce from burdens, interferences, and conspiracies to restrain and monopolize it. But the authority of the federal government may not be pushed to such an extreme as to destroy the distinction which the commerce clause itself establishes, between commerce 'among the several States' and the internal concerns of a state."

The decision in the Schechter case and the doctrines there enunciated are still in full force and effect despite unauthoritative advices to the contrary. On the point under consideration the factual situations there and here are entirely parallel and, despite the differences in the statutes under which government control of hours and wages in an intrastate business is attempted or invoked, the principles involved are the same. We find no valid ground upon which the case can be distinguished. The decision of the Supreme Court of the United States upon the question of the interpretation and application of the commerce clause of the Federal Constitution is conclusive and binding upon this court. We concur with the learned Justice presiding below that it cannot be held in this action that the hours and wages of the plaintiff employee while he was working in the defendant's purely intrastate business so affected interstate commerce that they are subject to federal control under the Fair Labor Standards Act.

No error in the rulings below being made to appear, the exception reserved must be overruled.

*Exception overruled.*