JOHN D. DUNCAN, PET'R. FOR WRIT OF ERROR
CORAM NOBIS
*vs.*
ALLAN L. ROBBINS, WARDEN
MAINE STATE PRISON

Knox.   August 7, 1963.

*Louis Scolnik,*
*G. Curtis Webber,* for Plaintiff.

*Richard A. Foley, Asst. Atty. Gen.,*
*John W. Benoit, Asst. Atty. Gen.,* for State.

SITTING: TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.  WIL-
LIAMSON, C. J., and WEBBER, J., did not sit.

SULLIVAN, J. Appellant sought from the Superior Court a common law writ of error *coram nobis*. The writ was issued but after a hearing it was dismissed. This is an appeal from such dismissal.

In 1956 appellant had been tried by a jury upon an indictment and had been adjudged guilty and heavily sentenced for the crime of attempting to escape from the State prison. P. L., Me., 1955, c. 309. He is serving that sentence. His plea of error *coram nobis* antedates P. L., Me., 1961, c. 131 and recites three grievances in justification for a recall or vacation of the court judgment and sentence against him:

"First, that perjured testimony was given at the trial by William E. Goldthwaite;

Second, that said perjured testimony was knowingly used by the prosecution;

Third, that the County Attorney induced William E. Goldthwaite to give such perjured testimony."

Such assertions frontally and gravely impugn appellant's 1956 trial as a repudiation of his liberty and a nullification of guarantees of Article 1, Section 6 of the Constitution of Maine and of the Fourteenth Amendment to the Constitution of the United States. Under those circumstances an issued common law writ of error *coram nobis* must be regarded as constituting an address "of right" for the movant in respect to the entertainment, consideration and adjudication of the issues generated. *Dwyer* v. *State*, 151 Me. 382, 393 through 396.

Immediately prior to the hearing in the case at bar appellant requested from the justice presiding an opportunity to retain legal counsel. The justice responded that the appellant had had a period of some 3 months in which to secure counsel and was entitled to no further indulgence.

Appellant who had been incarcerated in prison for years advanced reasons why his confinement had presented impediments to his engagement of an attorney. Appellant asked for a suspension of the proceeding to afford him an interval for prevailing upon his brother or aunt to supply funds or to finance the procurement of an attorney. The justice without success assisted the appellant in the latter's effort to engage one or the other of two local attorneys nominated by the appellant. The justice thereupon informed the appellant as follows:

"It doesn't seem to me that any of your rights have been violated in that regard. You knew all the time that you were going to be back here with the opportunity to correspond with counsel and have counsel ready here when you were returned from Alcatraz for the express purpose of this hearing. I have sent for Mr. Burgess and Mr. Knight, and you may have the opportunity to talk with them. If either or both are willing to represent you I can assure you the Court would be pleased to have you have representation. The case could then be handled more expeditiously by a person who is familiar with our Court procedure. You have a right to represent yourself, and the Court appreciates that it will have to be indulgent and permit you to present your case in the best manner possible. The Court has no intention of in any way preventing you from having a full and complete hearing, but so far as continuing this hearing to some later date in order for you to investigate the possibility of being able to employ counsel it seems that it is a request entirely unreasonable and unjustifiable in view of the time that has elapsed during which you have had every opportunity so far as the Court is concerned to employ such counsel as you saw fit to employ. You may be seated if you wish until Mr. Knight and Mr. Burgess arrive. I have just been informed that Mr. Knight left for Maryland yesterday. I now hand you through the officer a certified copy of the writ of

error corum (sic) nobis that was issued on your petition. Is there any error or complaint that you have or know of that is not contained in your petition?"

Twice more during the hearing appellant without avail applied to the court for the aid of legal counsel.

The record contains satisfying assurances of appellant's indigence. Appellant in his pleading had without challenge by denial represented that he was impecunious. At his jury trial some four years earlier the court had afforded him counsel. In the interim he had been a prison inmate continuously, for much of that period at Alcatraz without any comprehensible means of acquiring finances. He had stated that he must have recourse to a brother or an aunt for the securing of counsel fees. The court at the hearing in the case at bar presumably considered it incumbent to absorb for the appellant the expense of his witnesses.

It must be noted that the learned presiding justice in 1960 possessed no authority for affording counsel to the appellant. There was no enabling statute or rule of court to such purpose. No public fund existed to supply payment for counsel appointed. By tradition, juristic principle and precedent no such obligation of providing counsel to a petitioner in *coram nobis* process had ever been recognized in this jurisdiction. *Coram nobis* in criminal cases is an aftermath or post appellate remedy. *Dwyer* v. *State*, 151 Me. 382. It is sought and applied only after conviction and final court judgment. It is denominated a civil proceeding. *Maine Civil Practice, Field and McKusick*, § 81.3, P. 613. A petitioner invoking relief has already been accorded his full day in court, no longer enjoys any presumption of innocence but is subjected to the assumption and satisfaction of the burden of proof. In 1960 and prior thereto he was obliged to procure his own paid or altruistic counsel.

The decisions of the Supreme Court of the United States interpreting and applying the clauses of the Federal Constitution are conclusive and binding.

*State* v. *Furbush,* 72 Me. 493, 496;

*Whiting* v. *Burger,* 78 Me. 287, 295;

*Waterville Realty Corp.* v. *Eastport,* 136 Me. 309, 315;

*Higgins* v. *Carr Brothers Co.,* 138 Me. 264, 271.

In these latter years many curative and corrective pronouncements of the Supreme Court of the United States have been rendered, purposed to evolve, define, restore or vindicate, for respondents charged with crime, their guaranteed rights under the *"due process of law"* and *"the equal protection of the laws"* clauses of Article XIV of the Amendments to the U. S. Constitution. The cogent effect upon federal and state administration of justice has been pervasive, trenchant and, withal, revealing. Comment and debate in university and legislative halls and from bench and bar have been rife and divided. But with undeniable certitude all must concede that many oppressive abuses have been exposed, outlawed and redressed.

The gathering and accumulating precedents with their promulgated propositions and consequential corollaries progressively afford more dependable assurance for the anticipation and prescience of conclusions yet to be formally declared by the nation's court of last resort. We know of no decided case of the United States Supreme Court expressly commanding the furnishing by a State of counsel for an indigent applicant seeking remedy by the common law writ of error *coram nobis.* It becomes necessary, then, for us to resolve whether the decisions hitherto rendered by that court divulge to the standard of moral certitude or through the dictates of consistency reasonably attest the

mind of the court upon this issue of counsel for this appellant.

In *Griffin* v. *Illinois* (1956), 351 U. S. 12, 100 L. ed. 891, Griffin for lack of funds did not have a stenographic report of his trial proceedings, necessary by law for the prosecution of a direct appellate review of his conviction for a non capital offense. The United States Supreme Court held that an indigent criminal defendant is entitled to a transcript of the trial record or to an adequate substitute therefor when the transcript or such substitute is necessary for the effective prosecution of an appeal from a conviction. The court quoted from Magna Charta:

> "To no one will we sell, to no one will we refuse, or delay, right or justice - - - - "

The court employing the implication of "invidious discriminations" further said:  (P. 19)

> "- - - - Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside - - - - - There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.  Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

In *Burns* v. *Ohio* (1959), 360 U. S. 352, the U. S. Supreme Court held that a State may not constitutionally require that an indigent defendant in a criminal case pay a filing fee ($20) before permitting such defendant to file a motion for leave to appeal in one of its courts.  The court commented in part as follows:

> " - - - - There is no rational basis for assuming that indigents' motions for leave to appeal will be less

meritorious than those of other defendants. Indigents must, therefore, have the same opportunities to invoke the discretion of the Supreme Court of Ohio." (p. 257)

" - - - - The imposition by the State of financial barriers restricting the availability of appellate review for indigent criminal defendants has no place in our heritage of Equal Justice Under Law." (p. 258)

In *Gideon* v. *Wainwright* (March 18, 1963), — U. S. — , 9 L. ed. (2nd) 799, Gideon had been charged with the commission of a noncapital felony and appeared in the State court without funds and without a lawyer. He asked the court to appoint counsel for him but was refused. He defended himself, was found guilty and imprisoned. In habeas corpus process the State denied him relief. The U. S. Supreme Court on certiorari overruled its former decision of *Betts* v. *Brady* (1942), 316 U. S. 455 and held that the Fourteenth Amendment made immune from State invasion and obligatory on the States the fundamental right to counsel in a felony trial. That court said, in part: (P. 805)

" - - - - From the very beginning our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him - - - - "

*Draper* v. *Washington* (March 18, 1963), — U. S. — , 9 L. ed. (2nd) 899.

Draper and another, both indigent, after conviction of felony in the State court, filed a notice of appeal with as-

signment of errors and a motion for a free transcript of the trial evidence and record. A hearing before the trial judge was had upon the motion and a transcript was denied as a waste of public funds in as much as the assignment of errors was frivolous. On certiorari such ruling was reversed by the U. S. Supreme Court. *Griffin* v. *Illinois, supra,* was reaffirmed. The latter court held, *inter alia:* (p. 907)

> " - - - - the Washington Supreme Court could not deny petitioners' request for review of the denial of the transcript motion without first granting them a 'record of sufficient completeness' to permit proper consideration of their claims. Such a grant would have ensured petitioners a right to review of their convictions as adequate and effective as that which Washington guarantees to nonindigents. Moreover, since nothing we say today militates against a State's formulation and application of operatively nondiscriminatory rules to both indigents and nonindigents in order to guard against frivolous appeals, the affording of a 'record of sufficient completeness' to indigents would ensure that, if the appeals of both indigents and nonindigents are to be tested for frivolity, they will be tested on the same basis by the reviewing court - - - - "

In *Douglas* v. *California* (March 18, 1963), — U. S. —, 9 L. ed. (2nd) 811, the issue was "whether or not an indigent shall be denied the assistance of counsel on appeal." The court said:

> " - - - - But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." (P. 814)

> " - - - - The present case, where counsel was denied petitioners on appeal, shows that the discrimina-

tion is not between 'possibly good and obviously bad cases,' but between cases where the rich man *can require the court to listen to argument of counsel* before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." (Emphasis added.) (P. 815.)

*Smith* v. *Bennett* (1961), 365 U. S. 708, 6 L. ed. (2nd) 39, contains the following: (P. 708.)

"The issue in these habeas corpus cases concerns the validity, under the Equal Protection Clause of the Fourteenth Amendment, of the requirements of Iowa law that necessitates the payment of statutory filing fees by an indigent prisoner of the State before an application for a writ of habeas corpus or the allowance of an appeal in such proceedings will be docketed - - - - - We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."

*Lane* v. *Brown,* — U. S. — , 9 L. ed. (2nd) 892 was also decided, March 18, 1963. We quote the authentic head note 1 from 9 L. ed. (2nd) 892, 893:

"1. The Fourteenth Amendment is violated where under the pertinent statutes only the Public Defender can procure a free transcript of the hearing of an indigent prisoner's petition for a writ of

> error coram nobis, and the indigent cannot pro-
> cure such a transcript for himself and appeal pro
> se from the denial of the writ, nor can he secure
> the appointment of another lawyer to get the
> transcript and prosecute the appeal, and the Pub-
> lic Defender refuses, because of his stated belief
> that the appeal would be unsuccessful, the indi-
> gent's request to represent him in perfecting his
> appeal."

In the instant case this appellant who has previously had his jury trial with benefit of counsel is not pressing to their culmination his appellant rights. *Coram nobis* by nature and objective is a collateral process. However, the common law writ of error *coram nobis* had been issued here prior to the court hearing and appellant thenceforth was undeniably proceeding as "of right." The factual issues in the case at bar are complex. The operative principles of law, the construction and effect of controlling criminal statutes are multiple, refined and intricate factors. Legal research is unavoidable. The assemblage, evaluation and legality of the available evidence are exercises sufficiently sophisticated for expert attention. The function and utility of common law *coram nobis* are somewhat occult for the bench and bar. To laymen they must provide confusion. In the present case a productive and determinative questioning of witnesses make urgent the talents of a trained examiner. The decided cases, too, make no longer tenable any theory that the participation of counsel at hearings is only for the assistance of the court. Counsel in the case at bar was indispensable to an adequate presentation and advocacy of the appellant's accusations.

Since appellant's cause is one "of right," this case, by the characterization contained in *Douglas* v. *California, supra,* would, were this suitor a citizen of financial resources and not impoverished, be one which *"can require the court to listen to argument of counsel before deciding on the*

*merits."* The U. S. Supreme Court by the authority of those cases hereinbefore cited is notably sensitive to "invidious discriminations" against the impecunious. The instant case would accordingly be dependably calculated to induce the redressing reversal of that court on behalf of the indigent appellant for whom the presiding justice was without authorization or means to furnish counsel or to effect that equality demanded by the Fourteenth Amendment.

True, appellant's *coram nobis* proceeding was instituted subsequent to final judgment against him. But, in its indispensability and for the necessary preservation of not absolute but constitutional equality between rich and poor, assistance of counsel is not to be summarily restricted to conventional trials or appellate reviews thereof. In the case at bar this common law writ of *coram nobis* poses a grave and arresting issue of the constitutional liberty of a citizen. The appellant was afforded the aid of legal counsel at his jury trial but now his need for such assistance has become recurrent and quite as compelling. Notwithstanding the circumstance that the relief now sought in this case may be classified as post appellate and collateral such a distinction will have little significant meaning because of the persistent and preponderant elements that the appellant at his hearing upon the writ was a suitor "of right" before a court required to listen to his attorney concerning appellant's constitutional liberty. The State has in effect suffered appellant's indigency to deprive him of manifestly necessary legal aid which a citizen of sufficient means could have acquired.

By their rationale and by their implications, at least, the precedents of the nation's highest court authoritatively admonish that under the circumstances of this case denial to appellant of the advice and guidance of legal counsel was reversible error.

The mandate shall be:

>*Appeal sustained:*
>
>*Judgment vacated:*
>
>*Case remanded for further hearing in accordance with this opinion.*