STATE of Maine

v.

Linda A. HAWKINS et al.

Supreme Judicial Court of Maine.

Jan. 22, 1970.

**256**

Bernard C. Staples, County Atty., Ellsworth, for plaintiff.

Atherton Fuller, Shirley Povich, Ellsworth, Norman P. Shaw, Bar Harbor, George W. Perkins, Skowhegan, Albert H. Winchell, Jr., Edward Stern, Bangor, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

Sixteen cases involving identical issues of law, have been consolidated by agreement of all parties. They are here on report for decision under the provisions of Rule 37A(b) of the Maine Rules of Criminal Procedure.

The defendants dispute the correctness of an interlocutory ruling of the Superior Court, denying a Motion to Suppress Evidence seized by State Police Officers.[1] Their attack is focused on the alleged insufficiency of the affidavit filed in support of the issuance of a search warrant used by the officers. (See Appendix A for text of affidavit.)

The State, in its brief, has removed any question of the standing of the defendants, or any of them, to challenge the legality of the search. Such issue (if any existed after Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)), was decided favorably to the defendants in State v. Cadigan et al., 249 A.2d 750 (Me.), (January 29, 1969).

The questions here for decision are:

(1) Was the affidavit supporting the application for a search warrant sufficient to justify the issuance of the warrant?

(2) Can the search which was made, be justified as a legal search without a search warrant incidental to a lawful arrest?

For reasons stated below, we must answer No to both questions.

■ Since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, it is clear the Fourth Amendment's proscriptions are enforced against the States through the Fourteenth Amendment and the standard for determining the reasonableness of a search and seizure is the same under the Fourth and Fourteenth Amendments. Ker v. California, 374 U.S. 23, at 33, 83 S.Ct. 1623, 10 L.Ed.2d 726. While in the first instance, the legality of a search and seizure must be determined under State law, the State standard can be no lower than the constitutional standards applicable to proceedings in the Federal Courts under Federal prosecutions. Ker v. California, supra.

■ It follows that the affidavit, to be valid, must not only satisfy requirements of our own Rule 41, Maine Rules of Criminal Procedure, but must be agreeable to Federal constitutional standards as defined by the Supreme Court of the United States.

The Fourth Amendment of the Constitution of the United States declares:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [2]

The constitutional proscription of unreasonable searches and seizures was in large part a reaction to the general warrant and warrantless searches that had so alienated the Colonists and helped speed the movement for independence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 at page 692.

---

1. Rule 41(e), Maine Rules of Criminal Procedure.

2. Article I, Section 5, of the Constitution of Maine contains similar language.

What is sought to be protected by the courts by suppressing evidence is not the lawbreaker, but the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.

"[The provisions of the Fourth Amendment] are not mere second-class rights but belong to the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. And one need only briefly to have dwelt and worked among a people possessed of many admirable qualities but deprived of these rights to know that the human personality deteriorates and dignity and self-reliance disappear where homes, persons and possessions are subject at any hour to unheralded search and seizure by the police." Mr. Justice Jackson, dissenting in Brinegar v. United States, 338 U.S. 160, 180, 69 S.Ct. 1302, 1313, 93 L.Ed. 1879, 1893.

See also: McDonald v. United States, 335 U.S. 451 at page 455, 69 S.Ct. 191, 93 L.Ed. 153.

Much criticism is heard of the technique which the Supreme Court of the United States has adopted for protecting Fourth Amendment rights. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. According to many, attempts to restrain police officers from making illegal searches, by excluding illegally seized evidence on constitutional grounds is to use unnecessarily the "big stick" of the Constitution to obviate a problem which, they argue, usually lends itself to adequate control by other means.

The Supreme Court itself in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L. Ed. 1782 (1949), declared it could not "brush aside the experience of States which deem the incidence of such conduct by the police too slight to call for a deterrent remedy * * * by overriding the [State's] relevant rules of evidence." [3] Notwithstanding the attitude of a majority of the States and for reasons which the Supreme Court of the United States felt justified such rule, that Court determined that the only way to protect Fourth Amendment rights from invasion by either the Federal or State governments was to remove the temptation to an illegal search by making the fruits of such illegal search unusable as evidence in any court.

With full awareness of the attitude of the States, the United States Supreme Court chose to vindicate what it considered sound Fourth Amendment principles at the possible expense of State concerns.

The imperative of judicial integrity compelled this result even though, under this constitutional exclusionary doctrine, in some instances "the criminal is to go free because the constable has blundered." Cardozo, J., People v. Defore, 242 N.Y. 13, at 21, 150 N.E. 585, at 587. "The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." Mapp v. Ohio, 367 U.S. 643 at 659, 81 S.Ct. 1684 at 1694.

In view of *Mapp* and *Ker,* discussion of the objections to the exclusionary rule becomes academic because the supremacy clause of the Constitution of the United States (Article VI) requires obedience by State officials to every change in Fourth Amendment law. Duncan v. Robbins, 159 Me. 339, 193 A.2d 362.

■ The constitutional provision to which we have referred not only commands

---

3. Maine never used the rule of exclusion until required to do so by Mapp v. Ohio, supra. See for example, State v. Plunkett, 64 Me. 534; State v. Burroughs, 72 Me. 479; Brown v. Robbins, 122 F.Supp. 229 (D.C.Me.), (1954).

against unreasonable searches and seizures, it further enjoins the issuance of search warrants "but upon probable cause, supported by Oath or affirmation." The policy of the law is that the existence or absence of probable cause shall be determined by a "neutral and detached magistrate" and not by "the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

■ To facilitate review, most courts, including ours, require procedurally that the affidavit[4] contain all the information on which the magistrate's judgment is based as to the existence of probable cause.

In State v. Cadigan, 249 A.2d 750 (Me.), it was held, in testing for the existence of probable cause that a reviewing court is not permitted to travel outside the allegations contained in the affidavit.

■ By a series of decisions the Supreme Court of the United States has established these principles: Only the probability and not a prima facie showing, of criminal activity is the standard of probable cause. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, that affidavits on probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. McCray v. Illinois, 386 U.S. 300, 85 S.Ct. 223, 18 L.Ed. 2d 62; that in judging probable cause issuing magistrates are not to be confined by niggling limitations or by restrictions on the use of common sense, United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L. Ed.2d 684; and that the magistrates' determination of probable cause should be paid great deference by reviewing courts. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

■ In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), a two-pronged test for determining probable cause in those many instances in which the affidavit is based wholly or substantially upon an informant's tip was described. (1) The affidavit must describe underlying circumstances from which a neutral and detached magistrate may determine that the informant is reliable; (2) the affidavit must describe underlying circumstances from which such magistrate may determine that the posited "reliable informant's" information concerning the existence of evidence of criminal activity is itself reliable and not the result of mere rumor or suspicion. The conclusion that the "reliable informant's" statements are not based on rumor or suspicion may be reached by the magistrate not only upon the basis that the informer says he has personal knowledge but also upon inferences which the magistrate[5] may draw as to reliability from the nature of the information supplied. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. The requirement is, the nature of the information be such that the magistrate can properly infer it was received by the informant in a reliable way.

■ The appellants urge upon this Court that it was error for the trial Court to refuse to compel the affiant to reveal the name of the informant at the hearing on the Motion to Suppress Evidence. We cannot agree. The use of informers is almost indispensable to the enforcement of the laws designed to curb the illegal drug traffic.

As was said by Mr. Justice Clark in Roviaro v. United States, 353 U.S. 53 at page 66, 77 S.Ct. 623 at page 631, 1 L.Ed. 2d 639.

---

4. In State v. Cadigan, supra, this Court ruled the phrase "A warrant shall issue only on an affidavit sworn to before a person authorized by this rule to issue warrants * * * " found in Rule 41(c), Maine Rules of Criminal Procedure, requires *a writing* under oath to support an application for a search warrant.

5. The Fourth Amendment does not deny law enforcement the support of the usual inferences, which reasonable men draw from evidence. It only requires such inferences be drawn by magistrate instead of officers. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367.

"First, it is well to remember that the illegal traffic in narcotic drugs poses a most serious social problem. One need only read the newspapers to gauge its enormity. No crime leads more directly to the commission of other offenses. Moreover, it is a most difficult crime to detect and prove. Because drugs come in small pills or powder and are readily packaged in capsules or glassine containers, they may be easily concealed. They can be carried on the person or even in the body crevasses where detection is almost impossible. Enforcement is, therefore, most difficult without the use of "stool pigeons" or informants. Their use has long had the approval of the courts. To give them protection governments have always followed a policy of non-disclosure of their identities. Experience teaches that once this policy is relaxed—even though the informant is dead—its effectiveness is destroyed."

Sound public policy dictates that an officer requesting a search warrant should be required to disclose the identity of his informant, either directly or indirectly, only in exceptional circumstances. McCray v. Illinois, 386 U.S. 300, 85 S.Ct. 223 (1967), held an informant's identity need never be disclosed unless his identity goes to the issue of guilt or innocence of the accused. *Roviaro* and *McCray* read together mean that an informant must be identified and produced if, and only if, his identity is relevant to some issue other than probable cause.

Testing the affidavit here under consideration by *Aguilar's* rules, we find the magistrate could properly conclude the affiant's assertion that the informer was "reliable" is accurate.

The affiant described information received from the informant on three prior occasions which, when checked, was found to be completely true.

As to the second prong of *Aguilar,* the affidavit here under consideration says only,

"That the same confidential informant who has furnished reliable information in the past and who is believed by your affiant to be reliable and credible; told this writer that a large quantity of narcotics described in Para. A at the aforementioned cottage on 12/2/68 in preparation for a party which would be held that evening." [6]

No other "underlying circumstances" is set forth in the affidavit from which the magistrate could determine for himself that the informant's claim concerning the existence of evidence of criminal activity was based on the informant's personal observations or other particular knowledge of the criminal activity and not the result of rumor.[7]

There is nothing in the affidavit to explain how the informant came by the knowledge "that a large quantity of narcotics described in Para. A ('is' or 'would be') at the aforementioned cottage on 12/2/68 in preparation for a party which would be held that evening." Nor is there anything in that statement, as there was in *Draper,* from which, by its nature, a magistrate could properly infer the information was received by the informant in a reliable way.[8]

---

6. Obviously the affiant inadvertently omitted the word "is" or the words "will be" after the words "described in Para. A."

7. This is so despite the fact that in the hearing on the Motion to Suppress Evidence, the affiant testified officers of his Department had the Shaw cottage under surveillance and had observed a gathering of people immediately prior to the time the search warrant was obtained. Had this information been included in the affidavit, it would have adequately corroborated the informant's assertions.

8. In *Draper,* while the informer did not state the way in which he had obtained his information, he reported that *Draper* had gone to Chicago the day before by train; that he would return to Denver by train on one of two specified morn-

We are unable to say that the affidavit in this case meets the constitutional standards as described in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), either on the basis of what it says or on the basis of inferences which can be drawn from what is said under the Rule in *Draper* as *Draper* was interpreted in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 at page 644 (1969).

We are very conscious that a natural reaction to a decision that there was no probable cause for the issuance of a search warrant when the contraband was found is: "Well, they found the stuff they were looking for, didn't they!" This statement begs the whole point of the requirement of finding probable cause *before* a magistrate may properly issue a search warrant.

Fourth Amendment rights can be safeguarded only if

(a) the officer is required to describe sufficient grounds to justify a finding by the magistrate that probable cause exists, *and*

(b) the magistrate is required to examine carefully the affidavit and exercise independent judgment that it does or does not disclose probable cause.

As a reviewing court we can determine the officer and the magistrate both acted properly only if we view the facts in the affidavit from foresight, not hindsight. If hindsight were used the issue of probable cause would always be unreviewed, even though the application for a search warrant might have been improvidently granted. On the one hand when no evidence was found in the search there would be no case to come to the attention of a reviewing court. On the other hand, if we held the finding of contraband ipso facto establishes probable cause existed, whenever the search was fruitful there would be no occasion for review.

The State contends that even if the search warrant should not have issued, the search and seizure can be justified as incidental to a lawful arrest.

■ It is well established that a police officer may make an arrest for an offense which is a felony not committed in his presence if he has "probable cause" for considering a felony has been committed and the person arrested is guilty of the felony. See for example, Theriault v. Breton, 114 Me. 137, 95 A. 699 (1915).

■ The essence of "probable cause" is reasonable ground for belief of guilt. State v. Littlefield, 161 Me. 415, 213 A.2d 431. If an officer makes a valid arrest, either pursuant to an arrest warrant or without an arrest warrant, on probable cause, he is authorized to conduct a reasonable search incident to such arrest. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). A search under these circumstances depends for its validity upon the validity of the arrest. The arrest cannot be based upon the results of the search. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

■ However, more evidence is needed to justify an officer in making a search without a warrant than is required for finding probable cause for issuance of a search warrant. Rosencranz v. United States, 356 F.2d 310; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

■ So far as the record in this case reveals, the arresting officer had received an informer's tip that narcotics were or would be in the Shaw cottage on the evening of December 2, 1968. He had no way

---

ings. He described in minute detail the clothes that *Draper* would be wearing upon his arrival at the Denver station, and that he would be carrying a zipper bag. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way.

of concluding the informant's information concerning the Shaw cottage was reliable and not mere guesswork, suspicion or rumor. He knew that there was, in fact, a party in progress at the Shaw cottage because he had a surveillance made of the premises. While this fact when coupled with the informer's tip would have been sufficient to justify the *magistrate* finding probable cause for issuance of the search warrant, it would not justify the *officer* making a warrantless search. The party could as well have been a perfectly innocent gathering of friends for a pleasant evening of sociability as a meeting for indulging in criminal activities. The officer could conclude, (1) his informer was reliable in this instance only if *he inferred* reliability from experience with this informer in the past, (2) the party was gathering to engage in criminal activities only if *he inferred* this from the informer's tip.

While the first hand knowledge of the affiant that a party was in progress at the Shaw cottage, if imported to the magistrate, would have been sufficient corroboration of the informer's tip to permit the *magistrate* to have inferred its reliability, the law *does not permit the officer to draw such inference.*

"Its (the Fourth Amendment's) protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10 at page 14, 68 S.Ct. 367 at page 369, 92 L.Ed. 436.

"The policy is to encourage officers of the law to seek to the fullest extent feasible the objective judgment of a magistrate on the probability that a crime is being committed before permitting entry on the property of private citizens. The device of this intervening step between clues and search is calculated to substitute the inferences of a neutral and detached magistrate for the inferences of a committed officer in the heat of ferreting out crime." Rosencranz v. United States, 356 F.2d 310 (CCA 1).

The record is barren of any personal knowledge of the officers concerning the commission of any felony or that the defendants were committing a crime. There was then an absence of "probable cause" for warrantless arrest. Since the arrest without warrant would not be legally justified, there could be no legally sanctioned search incident to such arrest. For the reasons above stated, we have no alternative but to sustain the appeal.

The entry will be

Appeal sustained.

## APPENDIX A

### "STATE OF MAINE

HANCOCK, ss.          DISTRICT COURT
District Five
Division of Central Hancock

### AFFIDAVIT AND REQUEST FOR SEARCH WARRANT

To Edwin R. Smith, Judge of the District Court to be holden at Ellsworth, in the County of Hancock, and State of Maine.

I, DETECTIVE W. LAWRENCE HALL, Detective of the Maine State Police, being first duly sworn on oath state as follows:

*Para. A*

That I have probable cause to believe and do believe that presently located on the premises presently owned by Phillip and Joan A. Shaw in Dedham, Maine, and being a wooden frame cottage in part consisting of one and one-half stories, being further described as a parcel of land on the easterly shore of Phillips Lake bounded on the east by block 19 S. cA. south by Lichen Way, on the north by Treat, approximately 160 feet on the shore; That there is now being concealed certain property, to wit, narcotics the possession of which is unlawful, to wit: Cannabis

Sativa I, more commonly known as marijuana and parts thereof and D-Lysergic Acid Diethylamide (LSD$_{25}$) and mescaline and its salts, and Methamphetamine Hydrochloride more commonly known as Speed and Heroin.

*Para. B*

That the facts and information upon which I have probable cause to so believe and do so believe as aforesaid are as follows:

1. This writer was given by a confidential informant, 1.652 grams of Cannabis Sativa L, more commonly known as marijuana, which was tested by the Laboratory of the State of Maine, Department of Health and Welfare, Augusta, Maine and proved to be marijuana.

2. That the same confidential informant gave this writer information that a quantity of marijuana and L.S.D. was to be sold at the parking area of the Bangor Auditorium, Bangor, Maine on 10/25/68 and in fact, L.S.D. was sold to a student of the Wasookeag School, Dexter, Maine, as witnessed and told to this writer by another student of the same school, on 10/25/68 at the Bangor Auditorium, Bangor, Maine.

3. That this writer was told by the same confidential informant that he could purchase L.S.D. and in fact, did purchase a quantity of L.S.D., which was tested by the Laboratory of the State of Maine, Department of Health and Welfare, Augusta, Maine and proven to be L.S.D.

4. That the same confidential informant who has furnished reliable information in the past and who is believed by your affiant to be reliable and credible; told this writer that a large quantity of the narcotics described in Para. A at the aforementioned cottage on 12/2/68 in preparation for a party which would be held that evening.

5. The said W. Lawrence Hall further states that he is positive that the said property is in the place to be searched, and it is necessary to prevent the removal of said property, that a warrant issue authorizing a search in the nighttime of the above described premises. The basis for this statement is again the reliable information to this effect given to this writer by said informant.

Wherefore, the said W. Lawrence Hall prays that a warrant may issue authorizing a search of the above described premises for said property, and that if said property or any part of the same be found, the said property may be seized.

Dated at Ellsworth, Maine, this 2nd day of December, 1968.

(Signed) W. Lawrence Hall
W. Lawrence Hall
Detective, Maine State Police

Subscribed and sworn to by the said W. Lawrence Hall this second day of December, 1968, before me

(Signed) Edwin R. Smith
Edwin R. Smith
(SEAL) Judge, District Court"

DUFRESNE, Justice (concurring in result).

I concur fully that the search of the Shaw cottage in Dedham, in the County of Hancock, cannot be justified as a search incidental to a lawful arrest.

On the other issue of the sufficiency of the affidavit as the basis for a finding of probable cause in support of the issuance of the instant search warrant, I concur that the reference affidavit fails the constitutional test established by the United States Supreme Court in Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and reiterated in Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. I further maintain that the affidavit would have been constitutionally deficient even if it had recited the officer's personal observation that a party was actually in progress at the Shaw cottage at the time of the application for the warrant. The informer's tip in this case, combined with

the personal knowledge of the affiant that the predicted party was taking place, would merely bring it within *Spinelli* factual dimensions, but still short of the *Draper* situation. In *Draper*, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, where the legality of the search and seizure depended on the existence of probable cause in support of an arrest without warrant, the evidence at the hearing on the motion to suppress established that the informant was a "special employee" of the Bureau of Narcotics who had been in the field for the Bureau to investigate and give information respecting illegal narcotic traffic for some six months. His reported information *regarding violations of the narcotic laws,* for which he was paid, was stated under oath always to have been accurate and reliable. The testimony further disclosed that the informant had reported to the Bureau's narcotic agent, prior to the tip concerning Draper's Chicago trip to secure heroin, that Draper had taken up residence at a stated address in Denver and "was peddling narcotics to several addicts" in that city. This evidence, even though not stated specifically to have been obtained by the informer through personal observation and surveillance, indicates at least that Mr. Draper was under investigation by the undercover man and had been to some degree connected with the illegal narcotic traffic prior to the reported information which resulted in his arrest and search. The affidavit in this case does not disclose any alleged previous activity by the Shaws or at the Shaw cottage or by any of the guests found therein on December 2, 1968; without any supporting data it recites the informant's report that on December 2, 1968 there were or would be the described narcotics at the cottage in preparation for a party which would be held that evening. There is no description of the persons who made the trip to the cottage to bring in the narcotics as present in *Draper*. There is no suggestion of any previous party at the Shaw cottage where narcotics were alleged to be present. Neither the affiant nor the informer aver any connection between the Shaws, their prospective guests and the unidentified parties to an alleged sale of marijuana in the Bangor Auditorium more than a month before, nor with any students of the Wasookeag School in Dexter, the Bangor sale being offered in support of the reliability of the informant. Even with sworn testimony that people were actually gathering at the Shaw cottage on the evening of December 2, 1968 for the obvious purpose of attending a party, such evidence would not have been sufficient to bring the case within the *Draper* rule.

Furthermore, the affidavit's failure to couch in positive terms the informant's report respecting the actual or prospective presence of drugs at the Shaw cottage at the time the information was given, due most probably to an accidental omission of the verbs "were" or "would be", coupled with the fact that the date of the report is left to inference, presents a substantial inadequacy in time averments which was condemned in Rosencranz v. United States, 1966, 1st Cir., 356 F.2d 310. Even if the affidavit had contained the affiant's knowledge that a party was actually being held at the Shaw cottage, the magistrate, in the face of such deficiency in positiveness and time-schedule of events, had to reach out, by an exercise in surmise or guess, for external facts with which to build inference upon inference, in order to establish the reasonable basis for his belief that narcotics were probably at that party. The officer-affiant must set forth the basis for the magistrate's inferences with enough precision so that, if the affidavit is subjected to an attack for lack of probable cause at a subsequent hearing, the trial judge will be ruling on the reasonableness of inferences based on the same underlying circumstances as confronted the magistrate in issuing the warrant. *Rosencranz,* supra. Justification for this rule is bourne out in the instant case, since the officer testified at the hearing on the motion to suppress that the information was not given on the day of his application for the warrant, but on the previous day, and the informer told

him that the narcotics would be there, and not that they were there at the time of the report.

The affidavit failed to set forth any of the underlying circumstances necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that there were narcotics in the Shaw camp at the time of the party. It is, of course, possible for an informant's bare conclusion as we have in the instant case to be buttressed by other corroborating information from an independent source, which in combination may provide probable cause for the issuance of a search warrant. But the affidavit in this case discloses no other probative information from which to infer that narcotic drugs would be present at the Shaw place on December 2, 1968; the affiant's statement certifying the fact that persons were congregating at the Shaw cottage for a party, even if present in the affidavit, would not have furnished that necessary corroborative information to salvage an otherwise inadequate affidavit. The magistrate must be presented facts which tend to establish a relationship between the premises or persons to be searched and the crime to be detected from which a probability of criminal activity may be inferred.

Where the accuracy of the information received from a named or confidential informant is not substantiated from other sources known or stated to be accurate or from corroborative facts known or discovered by the affiant personally or from other official or reliable report, the officer-affiant must, under *Aguilar* and *Spinelli*, further present in his affidavit a substantial factual basis for crediting the informant's story.

The credibility of an informer may be shown in different ways. The most common allegation accepted as proper to substantiate reliability is that the informer on past occasions where he furnished information was instrumental in procuring narcotic convictions. Similar acceptability has been extended to such reports where the affiant stated that the data received served to induce trained officers to make arrests for narcotic violations. People v. Rogers, 15 N.Y.2d 422, 260 N.Y.S.2d 433, 208 N.E. 2d 168; People v. Cruz, 1966, D.C. of App., Cal., 244 Cal.App.2d 137, 53 Cal.Rptr. 354. The affiant's reasons for believing a named informant's report were accepted as sufficient where 3 named reputable citizens were said to have vouchsafed for his truthfulness. Sessoms v. State, 1968, 3 Md.App. 293, 239 A.2d 118. The New York Court, in People v. Montague, 1967, 19 N.Y.2d 121, 278 N.Y.S.2d 372, 224 N.E. 2d 873, cert. denied 389 U.S. 862, 88 S.Ct. 116, 19 L.Ed.2d 130, sustained a search warrant where the affidavit in sufficient detail established that the informer was speaking with personal knowledge and relating his own participation with the suspects in their illegal activities. The credibility standard was said to have been met.

The instant affidavit is manifestly inadequate to support the affiant's statement of reliability and credibility. The informer's alleged ability to obtain marijuana and L.S.D. on some undisclosed single occasion, without relation to time, place or person, had no probative value tending to indicate that the informer should be believed respecting the tip relating to the Shaw cottage any more than if he had merely shown the officer a counterfeit bill. Evidence of the possession of marijuana and L.S.D., without more, bears no relation to the truthfulness of the informer's tale. This Court would have to take notice that the illegal drug market is not confined to the area of Dedham, Maine. The affiant's statement concerning the informer's tip of a sale of L.S.D. at the parking area of the Bangor Auditorium in the City of Bangor aids in no way to establish the credibility to be given the tipster because of it, since the accuracy of the information is made to depend entirely upon the statement of an unidentified student whose reliability is completely unsupported. If the hearsay originating from the informant is insuf-

ficient for want of supporting credibility data, how can it be buttressed by additional hearsay from an unidentified source whose reputation for truth and veracity is also unknown. The affidavit in this case fails to present a proper factual setting whereby the officer-affiant had good reason to believe the statement of the informer, either from past experience or other stated information in his possession.

I do fully appreciate that disclosure of specific information· about the informant's source of knowledge or about other evidentiary data which the informer may have possessed and which, if presented to the magistrate in the affidavit, might have made some showing of a nexus between the Shaws or their invited guests and the alleged parties to the Bangor Auditorium sale, may practically reveal his identity and thus reduce the life expectancy of police undercover agents to the detriment of public order and of effective law enforcement. Yet constitutional requirements of probable cause must be met to the satisfaction of the magistrate and not left to police judgment, even in extraordinary circumstances. Where disclosure of the informant's sources of knowledge to the extent necessary to obtain a warrant might reveal his identity and endanger his life, the police must secure independent corroborative evidence by further investigation before applying for the warrant. A good faith effort on the part of the law enforcement authorities in the use of their detective expertise and crime-probing equipment and personnel to confirm their informer's tips with independent corroborative evidence instead of the hurried execution of arrests upon unsupported information of untried informants will go a long way to carry out their duties of ferreting out crime within the constitutional directives. As stated in People v. West, 1965, D.C. of App., 2d Dist., Cal., 237 Cal.App.2d 801, 47 Cal.Rptr. 341:

"We are confident that in most cases the courts and the police can achieve a common perspective in law enforcement which keeps in view both the constitutional protection of the individual against society and the constitutional protection of society against the lawless individual, and which sufficiently focuses on both targets so that neither drifts from sight."

I conclude that the instant affidavit was fatally defective in its failure, first, to furnish sufficient underlying circumstances from which the informer in this case concluded that our laws against possession of narcotic drugs would be or were being violated at the Shaw cottage and that narcotic drugs to be searched for could be found there, and secondly, to recite adequate factual reasons which enabled the officer-affiant to conclude that the informer was credible and his information reliable. State v. Cadigan, 1969, Me., 249 A.2d 750, at page 756. For these reasons, I concur in sustaining the appeal.