### AVERY *v.* UNITED STATES.

1. During the rebellion the United States took possession of A.'s house in a rebel town as "captured and abandoned property," rented it from 1862 to 1865, and received rents, $7000, which were in the Federal treasury. After the suppression of the rebellion, A. having returned home, the government sued him, and in March, 1867, got judgment and issued execution against him, he not pleading as a set-off the $7000 received by the United States. In May, 1869, he applied to the court to satisfy the judgment, and moved also for a writ of *auditâ querelâ;* assigning as a reason for not having pleaded a set-off, that he did not know until just before he filed his petition and made his present motion, that the money was in the treasury of the United States. *Held,* that the petition and motion were rightly denied; for that if A. had a claim on the United States, he was in fault in not having discovered and pleaded it.

2. *Auditâ querelâ* does not lie where the party has had a legal opportunity of defence and neglected it.

3. Nor in any case against the United States.

ERROR to the Circuit Court for the District of West Tennessee.

Avery owning a warehouse in Memphis, Tennessee, had become surety for the postmaster there appointed before the rebellion. During the war and after the government troops

---

* Whitaker *v.* Insurance Co., 29 Barbour, 319; Post *v.* Ætna Insurance Co., 43 Id. 351; Com. M. Ins. Co. *v.* Union M. Ins. Co., 19 Howard, 323.

had driven the insurgents from Memphis, and were themselves in military occupation of the place, the treasury agents of the United States taking possession of the house (under the act of Congress, as was stated in the brief of Avery's counsel, relating to captured and abandoned property), leased it to one Ford, who occupied it from September, 1862, till the same month in 1865, paying a monthly rent which amounted in all to about $7000. The rebellion being suppressed, and Avery having returned to Memphis, the United States sued him in the court below as surety on the postmaster's bond, and in March, 1867, got judgment against him for $5023, and issued execution.

In this state of facts, which for the purposes of this case, seemed to be conceded on both sides, Avery now, May, 1869, filed a petition in the same court in which the judgment had been got, setting forth the fact of the judgment and execution, the previous occupation of this property by the United States, and the receipt by rental agents of the United States, and payment into the Federal treasury of rent for it amounting to the sum of $7000, and praying the court to stay proceedings on the execution and to have the judgment declared satisfied. The ground of his petition, of course, was the alleged fact that the government had received rents from his warehouse, for a sum larger than the amount of their judgment; a fact in proof of which he annexed to his petition copies of the rental agent's receipts. As a reason why he had not presented his demand by way of set-off on the trial of the suit against him as the postmaster's surety, he alleged that he did not know at that time that the money was in the treasury of the United States, nor did he receive knowledge of that fact or evidence on which to found his demand until shortly before presenting his petition. When filing his petition he moved also for a writ of *auditâ querelâ*, asking for it on the facts and statements contained in his petition.

The court below, without any formal pleadings, denied the prayer of the petition, and also refused to grant the writ. To this, its action, the present writ of error was taken.

*Messrs. Albert Pike and R. W. Johnson, for the plaintiff in error ; Mr. B. H. Bristow and C. H. Hill, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

Conceding, for the purposes of this suit, that the order of the Circuit Court in the premises is a final judgment, within the meaning of the 22d section of the Judiciary Act, to review which a writ of error will lie, did the court err in the disposition it made of the case?

The lease of the house was authorized, if the owner of the property was voluntarily absent from it and engaged in the rebellion, and, as the Federal military forces during the term of the lease occupied Memphis, it is fairly to be inferred that Avery had abandoned his house under circumstances which warranted the officers of the government in taking possession of it; and the presumption is, in the absence of an averment in the petition to the contrary, that these officers discharged their duty, and paid into the treasury the money received by them for the rent of this property long before the suit against Avery was tried in the Circuit Court. If so, and the United States, on this account, were indebted to Avery (a point on which we express no opinion), it was the duty of Avery to plead this indebtedness by way of set-off, to the action brought against him. It is a familiar principle that no one can be relieved against a judgment, however unjust he may consider it, if he had a defence and, through his own fault, failed to present it. Avery is in this predicament. It will not avail him to say that he did not know, when the suit was tried, that the money was in the treasury, for it was his business to have informed himself on the subject. This he could easily have done, by communicating with the bureau of the Treasury Department where the accounts of the leases and sales of abandoned property were kept, and this inquiry would have resulted in obtaining evidence equally available for his purpose as that which accompanies his petition. It would lead to endless embarrassments in the administration of justice, if a party were permitted to reopen a judgment on the ground that he had

a defence which he did not present, because ignorant of it, but which, the court can see, he could have known if he had used reasonable diligence to ascertain it.    It is impossible to suppose that Avery, on his return to Memphis after the war, was not informed of the state of things concerning the occupation of his house during his absence, and yet he institutes no inquiry on the subject, and when subsequently sued by the United States for a large demand, allows it to pass into a judgment without the assertion of any claim for the use of his property.    Under these circumstances he cannot be permitted to do, two years after the rendition of the judgment, what he should have done on the trial of the cause.

It follows, as the result of these views, that the Circuit Court did not err in overruling the motion to recall the execution and satisfy the judgment.

Nor did it err in refusing the writ of *auditâ querelâ*, because this writ does not lie, where the party complaining has had a legal opportunity of defence and has neglected it.*

Besides *auditâ querelâ* is a regular suit in which the parties may plead and take issue on the merits,† and cannot, therefore, be sued against the United States, as in England it could not against the Crown.

JUDGMENT AFFIRMED.

---

* Lovejoy *v.* Webber, 10 Massachusetts, 104; Thatcher *v.* Gammon, 12 Id 270; Bacon's Abrid., title *Auditâ Querelâ;* Wharton's Law Lexicon, same title.

† Brooks *v.* Hunt, 17 Johnson, 484.