KENNETH J. WINTLE
*vs.*
CARL R. WRIGHT, ADMR.
ESTATE OF GEORGE A. LIBBY

Somerset.    Opinion, September 20, 1955.

*Bartolo M. Siciliano,* for plaintiff.

*Eames & Eames,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, TAPLEY, JJ. BELIVEAU, J., dissenting. MR. JUSTICE TIRRELL sat on this case and participated in conferences but died before the opinion was submitted to him.

WEBBER, J. We are here asked to examine the sufficiency of the declaration in a writ which invokes the ancient remedy of *audita querela.* Tested by demurrer, the declaration was deemed insufficient by the presiding justice below and exceptions were seasonably taken to his action in sustaining the demurrer.

"The writ (of *audita querela*) is a remedial process to relieve a party who has been injured or who is in danger of being injured from the consequences of a judgment because of some improper action of the party who obtained it which could not have been pleaded in bar to the action." Martin's Notes on Pleading page 87; 5 Am. Jur. 491. "Such process, according to the authorities, is 'in the nature of a bill in equity, to be relieved against the oppression of the plaintiff.' It lies where, *after judgment,* the debt has been paid or re-

leased, and yet the debtor is arrested, or in danger of being arrested, on an execution issued on such judgment; *and where the debtor has had no opportunity to avail himself of such payment or release, in defense;* and in other cases where a defendant had good matter to offer in defense, *but had no opportunity to offer it before judgment against him."* (Emphasis supplied) *Bryant* v. *Johnson,* 24 Me. 304 at 306. The remedy is preserved by statute, R. S., 1954, Chap. 127. "It is a general and well settled principle that when a party has had a legal opportunity to make his defense, or when the injury of which he complains is to be attributed to his own neglect, he cannot be relieved by an *audita querela."* 5 Am. Jur. 493, sec. 3; see *Radclyffe* v. *Barton,* 161 Mass. 327, 37 N. E. 373; *Staniford* v. *Barry,* 15 Am. Dec. (Vt.) 692; *Goodrich* v. *Willard,* 77 Mass. 380, 11 Gray 380; *Walter* v. *Foss,* 67 Vt. 591, 32 A. 643; *State* v. *Hall,* 17 S. W. (2nd) (Mo.) 935; *Parker* v. *Murphy,* 215 Mass. 72, 102 N. E. 85. The neglect of the party to make seasonably the defense available to him will defeat his right to the writ of *audita querela* even when that neglect stems from his ignorance of the existence of the defense, where it is apparent that by the exercise of reasonable diligence, he could have ascertained it. *Avery* v. *U. S.,* 12 Wall. (U. S.) 304, 20 L. Ed. 405. "But a payment of a part of a demand, or of the whole of it, made before judgment, could not support * * * * an *audita querela:* because it was the folly of the party, that he had not the advantage of it before judgment rendered." *Thatcher et al.* v. *Gammon,* 12 Mass. 268 at 270. A contrary rule would overlook the necessity of putting an end to litigation, would result in "great confusion" and "perpetuity of disputes," and "would lead to endless embarrassments in the administration of justice." *Thatcher et al.* v. *Gammon, supra,* at page 271; *Avery* v. *U. S., supra,* at page 306.

In a few instances the writ has been allowed where the alleged defense was available at the trial but not made be-

cause of the intervention of the fraud and deceit of the defendant which actively prevented the introduction of the defense. In *Lovejoy* v. *Webber,* 10 Mass. 101, payment was made after suit but before judgment, and the court in determining whether *audita querela* would lie, said at page 104, "Before judgment was entered indeed the adjustment had been made; but with an understanding that the suit was thereby *finally* compromised, *and was to be discontinued by the care of this defendant.* In this the plaintiff was deceived: but the present defendant is not to avail himself of this fraud, which is pointedly, and as he has confessed, truly alleged against him." (Emphasis supplied.) Plaintiff's declaration in the writ of *audita querela* was adjudged sufficient. Likewise in *Bower, Inc.* v. *Silverstein,* 298 Ill. App. 145, 18 N. E. (2nd) 385, payment in full having been made after suit but before judgment, the defendant promised the plaintiff that he would instruct his attorney to dismiss the case, and the plaintiff, in reliance on the promise, left town and disregarded the pending litigation. In his absence, judgment was taken against him. Here also *audita querela* was deemed applicable. We are satisfied, however, that in neither the *Lovejoy* case nor the *Bower* case would the court have allowed the use of the remedy had there not been present active and affirmative fraud and inducement on the part of the defendant which effectively intervened to prevent the making of the available defense.

With these principles in mind, we proceed to a consideration of the averments of the voluminous declaration before us. The declaration discloses that plaintiff owed an interest bearing note to the estate of which defendant was administrator. Suit on the note was instituted and service made on the present plaintiff in December, 1952. His second payment on account was made on January 3, 1953, at which time he received from the defendant a receipt as follows:

"$50.00          January 3, 1953     No. 173
Received of Kenneth J. Wintle
Fifty and OO/xx -------------- Dollars
Payment on note to late Geo. A. Libby, Bal-
ance due if paid before January 10, 1953
*$159.54*

by Carl R. Wright, Adm. Geo. A. Libby est."

On January 9, 1953, plaintiff prepared his check for
$159.54 but there is no allegation that it was tendered to or
accepted by the defendant on that day. We note that there
was no endorsement on the check to indicate that it was
tendered in full payment or in discharge of the pending
action or the like. On January 10, 1953, the defendant gave
the plaintiff his receipt as follows:

"$159.54/100     January 10, 1953     No. 179
Received of Kenneth J. Wintle
One Hundred Fifty-Nine and 54/100 Dollars
Payment on note to late Geo. A. Libby   Writ
entered in court before received check.

by Carl R. Wright, Adm.
Geo. A. Libby est."

The plaintiff alleges that this payment was "in full of the
indebtedness demanded of him by the said defendant."
Whether this has reference to the defendant's demand or
offer of settlement which expired on January 9, or is in-
tended to allege that the defendant's demand was the same
on January 10, is not decisive of this issue. The question is
rather whether the defendant fraudulently induced the
plaintiff not to appear in court and raise the defense of
payment.

The writ was made returnable to the term of court held
in January, 1953. The plaintiff here failed to make appear-
ance and judgment was rendered against him by default for
$163.94 with costs of $11.95. On a subsequent execution,

credit was given for the payment of $159.54. When cited to disclose, the plaintiff here again failed to appear and was subsequently arrested on a capias execution on which the officer was instructed to collect $28.58.

There are no other material averments bearing on what we deem to be the determinative issue here. It is apparent from the allegations of the declaration that plaintiff was given an opportunity to settle his obligation at any time *"before"* January 10, 1953 for $159.54; that he failed to take advantage of that offer; that on January 10, 1953 he made payment in that amount which, for aught that appears to the contrary, either in the receipt or from the conduct of the parties, was given and accepted as a payment on account; that defendant here neither receipted for the payment as in full discharge of the obligation in suit nor offered or agreed that he would withdraw the writ or dismiss the action. On the contrary, his receipt of that date, inferentially at least, gave warning and notice that his intention was otherwise. The receipt acknowledged payment *"on"* the note, not *of* it. It did not recognize the payment as in full or as in discharge of the pending suit. There is no suggestion in the declaration that the note itself was given to or demanded by the plaintiff. The receipt specifically called attention to the fact that the writ had already been filed in court for entry, without suggestion or commitment as to what further should be done with it. The plaintiff here alleges no act or conduct of the defendant which would tend to induce or entice him to neglect the court action or fail to raise a defense of payment whether in part or in full. Unless fraudulently induced by the defendant, such neglect is fatal to the right to *audita querela*. To hold otherwise would be to destroy the universally accepted limitations upon the use of the remedy, and to invite a flood of litigation attacking the validity of the judgments of our courts.

The defendant here is a practicing attorney while the plaintiff is a layman presumably unskilled in the law. We do not intimate or suggest by this opinion that we condone or approve anything less than the most meticulous care and responsibility on the part of a member of the legal profession when dealing with a layman. We would have no hesitation in expressing in unmistakable language our disapproval of the conduct of any attorney at law who failed in any duty to give full explanation or advantaged himself improperly of the ignorance of a layman as to the legal consequences of any proposed settlement. But this matter is before us on demurrer. This defendant is not denied the use of demurrer in an appropriate case merely because he happens to be an attorney. The technical restrictions upon demurrer are such that it is impossible for the defendant to use it to attack the legal sufficiency of the declaration in the writ and at the same time raise affirmative defenses which might explain or justify his conduct. While a demurrer admits the truth of the allegations for the purpose of determining the legal sufficiency of the declaration, it does not go so far as to admit their truth for other and unrelated purposes. In his use of demurrer the defendant here employs a proper vehicle and says in effect, "Assuming for the moment everything you have alleged, still the remedy of *audita querela* is not a proper one upon the facts alleged and the law applicable thereto." In this legal position the defendant is correct as the presiding justice properly ruled. We think that censorship of the defendant's conduct at this stage and before he has been heard upon the merits would be premature and ill advised. This court has great power to destroy the reputation and confidence enjoyed by a member of the legal profession. That power must be exercised with the greatest care and restraint and only upon certain knowledge that the attorney merits rebuke. Until we have before us legal evidence which demonstrates some failure in the performance of professional duty on the part of the

defendant, we will reserve our judgment as to whether or not his conduct properly subjects him to censure.

The entry will be,

*Exceptions overruled.*

BELIVEAU, J. (dissenting) It is with regret that I disagree with the majority opinion. While the amount involved is insignificant the principles are of such importance to me I feel constrained to give my reasons for dissenting.

As stated in the majority opinion, this matter is before us on a demurrer by the defendant to the plaintiff's declaration. The defendant may, of course, if he sees fit, take advantage of a defective declaration (one that does not state a cause of action), *but* if the facts alleged are not true, then he, the defendant, as a member of the Bar and as an officer of this court, should have demanded and been given a hearing on the merits. Having deliberately chosen his course of action he may not now complain that the merits have not been passed upon.

In *Lovejoy* v. *Webber,* 10 Mass. 101, *audita querela* was brought by the plaintiff to effect the discharge of a judgment obtained by the defendant after an action on a note had been fully satisfied by the plaintiff. The defendant demurred, and claimed payment might have been pleaded by Lovejoy in bar to the action. On this phase of the case the court said:

> "If the facts averred in the writ are true, and these are now to be understood as confessed, the plaintiff in this action, — defendant in the action wherein a judgment, as he alleges, has been fraudulently recovered against him, — had no opportunity of pleading the payment or discharge of the demand which he had adjusted."

I do not mean to intimate that the defendant, because an attorney, may not contest the action by demurrer, and if

this were an action other than one where the defendant's conduct as an attorney is involved, I would say nothing about it. The demurrer, in this case, and for the purpose of this case only, admits, as the majority readily concedes, the allegations of facts.

While the opinion does not in any way criticise the conduct of the defendant it nevertheless states the court will not "condone or approve anything less than the most meticulous care and responsibility on the part of a member of the legal profession when dealing with a layman." The admitted facts show much "less than the most meticulous care and responsibility" by the defendant and the court should not condone or approve his conduct.

The defendant understood the purpose of a demurrer. Its effect, insofar as this case is concerned, is much the same as if he in a trial on the merits had admitted, under oath, the allegations made against him by this plaintiff. The court, in an imaginary statement attributed to the defendant, quotes him as saying "assuming for the moment everything that you have alleged * * * * *" this remedy does not lie. The time element here is not involved and once the demurrer is sustained it must stand on the records of this court, forever, as an admission of the facts alleged. These admissions are not "for the moment" or any specific length of time.

In *Lovejoy* v. *Webber, supra,* the court has this to say about *audita querela:*

"The remedy is said to be in the nature of a bill in equity. An allegation of fraud and deceit seems to be essential, and the case supposed must be one where legal process has been abused, and injuriously employed to purposes of fraud and oppression. But allegations of abuse are not to be heard as a ground of complaint, where the party complaining has already had a legal opportunity of defence; or when the injury, if any has been sus-

tained, is to be attributed to his own neglect; for, otherwise, legal proceedings would be endless. It is a rule, therefore, that an audita querela does not lie, where the party has had time and opportunity to take advantage of the matter which discharges him, and has neglected it."

The admitted facts show that on the 9th day of December, 1952, the defendant, in his capacity as administrator of the estate of George A. Libby, and acting as counsel for himself, brought suit against the plaintiff here and declared on a note dated May 12, 1949 for $200 payable on demand with a credit of $30 on December 10, 1951 and a further credit of $50 on January 3, 1953.

The receipt given the plaintiff by the defendant for the payment of $50.00 on account, January 3, 1953, contained a stipulation that $159.54 was the balance due and would be accepted as such, if paid before January 10, 1953.

On the 10th day of January 1953 the plaintiff tendered, and the defendant accepted a check, dated January 9, 1953, for $159.54 with the notation on the receipt given this plaintiff, "writ entered in court before received check."

January 10th was on a Saturday, three days before the opening of the January term. The plaintiff did not appear, was defaulted and judgment recovered against him for $163.94 and cost taxed at $11.95.

On the 9th day of February the same year, the defendant obtained an execution against the plaintiff for the full amount. Nothing more was done until the 19th day of November of that year when the defendant requested a renewal of the execution and certified that $159.54 had been paid on the first execution. This was false and known by the defendant to be false. The money was paid before entry of the writ and long before judgment.

On the second execution the Clerk of Courts noted that $159.54 was credited on the former execution. On the 11th

day of January 1954, nearly a year after judgment, the defendant here, in his dual capacity as administrator and counsel for himself, petitioned the Judge of the Western Somerset Municipal Court of Skowhegan for a full disclosure of the plaintiff's business and property affairs. In that petition the defendant, knowing the statement to be untrue, alleged there was due him, in his capacity as administrator, $176.89.

The plaintiff did not appear, was defaulted, and a capias for his arrest issued. Nothing more was done until the 23rd day of March 1954, when the defendant returned to the Superior Court the second execution with an endorsement that $159.54 had been paid. The third execution was issued by the court for a total of $175.89 plus $1.50 with a notation "$159.54 credited on former execution."

On March 30, 1954 the defendant gave this execution to an officer with instructions to collect $28.58 plus his fees or otherwise commit the plaintiff.

The plaintiff was arrested on April 27, 1954 and in order to obtain his release from arrest gave a statutory bond to the defendant in the amount of $75.

It is well to point out the parties did not stand on an equal footing and that the advantage was all with the defendant, who was well versed in the law and familiar with judicial procedure. The plaintiff, as a layman, did not have this knowledge, and was without counsel to advise and guide him. This is one of the elements which makes this case important and the conduct of the defendant subject to close scrutiny.

The plaintiff was to pay the defendant $159.54 before the 10th day of January 1953 and that sum was to be accepted in full settlement of the action then pending and returnable in the Superior Court on Tuesday of the next week.

It is significant that the defendant accepted the sum of money, although a day late, which he had agreed to accept, and, as far as the record is concerned, said nothing about prosecuting the action. The plaintiff, a layman, having paid the amount agreed upon, had every right to believe, as any layman would, that the payment settled once and for all his liability on the original note.

It is true that the receipt given by the defendant acknowledged the money as payment on the note with a notation that the writ was entered in court before this payment was received. The majority opinion states that this payment, "for aught that appears to the contrary, was given and accepted as a payment on account;"

I cannot see how the court can come to that conclusion, because all there is in the case bearing on this point is the receipt of January 10, 1953.

The plaintiff having paid the amount which the defendant stated he would accept in full satisfaction had the right to, and would believe there was nothing further for him to do. The notation that payment was "on" the note and that the writ had been entered in court was not the doings of the plaintiff. The receipt did not state that payment was on account and the language used by the defendant was his own and, in my opinion, self serving. Acceptance of the receipt by the plaintiff did not change the picture in the least.

The plaintiff was not informed the writ would be entered and the action prosecuted.

To fortify this further, the declaration alleges that the payment was in full of the indebtedness demanded by the defendant. This allegation is admitted by the defendant's demurrer.

The plaintiff had not on January 10, entered his writ and it could not be entered until the opening of the court, three

days later. Up to that time, the defendant had complete control of the situation and could have disposed of the action without any extra expense or cost to him, by marking the action "mis-entry," which is the custom and practice always resorted to when the situation requires it.

It was the duty of this defendant to inform the court that $159.54 had been paid. The defendant ignored his oath and violated the ethics of our profession when he took judgment for the full amount, without giving full credit for what was paid him the Saturday before. This, of course, done knowingly and with full knowledge of the situation by the defendant, was a fraud on the plaintiff and the court.

In the so-called disclosure petition brought on January 11, 1954, the defendant informed the disclosure commissioner that $176.89 was still due—this too, was glaringly false, as the defendant well knew. The plaintiff here did not appear to disclose, was defaulted, a capias execution issued for his arrest and he was arrested.

The plaintiff has established fraud and deceit which the court in *Lovejoy* v. *Webber, supra,* said was necessary in *audita querela* when legal process has been abused. That decision goes on to say that this process should not be resorted to where the party complaining had a legal opportunity to defend and failure to defend was attributed to his own neglect. It does not apply here because the plaintiff, the defendant in the action on the note, had made a complete settlement on January 10, 1953 and had no reason to suspect or believe that the writ would be entered in court and judgment obtained. He had no notice until January 11, 1954, or nearly a year later, that judgment had been obtained against him, without any credit for the January 10 payment. Why the defendant did not make demand for payment or attempt to collect the execution for a year, is not established.

The plaintiff was not negligent nor can negligence be attributed to him where he had no knowledge or information of the situation, as it existed.

As I said in the beginning of this opinion, I dislike to disagree with the majority as I have in this dissenting opinion, but a situation such as this must be faced. The public must know and feel that our courts do not and will not hesitate to condemn unprofessional conduct on the part of one of its officers.

I do not agree with the majority opinion that *audita querela* does not lie in this case or that to so hold here would "destroy the universally accepted limitation upon the use of the remedy, and to invite a flood of litigation attacking the validity of the judgment of our courts."

If litigation occurs as a result of an opinion favorable to the plaintiff, our court will not hesitate, as it has done in other cases in the past, to deny this process where a litigant is not entitled to it. That situation must be met when it occurs. This defendant must not be absolved of responsibility with the idea in mind that by so doing, further litigation in this respect will be avoided.

I would sustain the exception to the demurrer and hold the defendant to account.