[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff commenced this summary process action based on nonpayment of rent. After the defendant appeared and filed an answer and special defenses, the parties entered into a stipulated agreement on October 3, 1996 which provided as follows: "Judgment may enter in favor of the plaintiff with a stay of execution through February 3, 1997 on the condition(s) that:
"Both parties agree reasonable use and occupancy shall be $700.00 per month due on the 3rd day and payable on or before the 10th day of each month commencing the 10th day of Nov. 1996.
"The plaintiff agrees to sell this property, 17 Anderson St, New Haven to defendants for the sum of $ 65,000.00 subject to the usual closing adjustments. There is no sales agent involved in this sale. CT Page 2514
"The closing shall be on or before Feb. 03, 1997. This date could be later if the defendants if the defendants have a mortgage commitment and private funds to finance the sale, then the stay can be extended through a new closing date. Use and occupancy shall be prorated, if the closing is any date but the 3rd of the month. Defendants shall pay $500.00 today and $500.00 on or before Oct 17, 1996 as down payment on house. . . ."
On October 3, 1996, the court (Munro, J.) approved the agreement and entered judgment in accordance therewith. Later that same month, the parties entered into an agreement for the purchase and sale of 17 Anderson Street, contingent on the defendants obtaining third party financing in the amount of $64,000.00 at the prevailing interest rate "through conventional mortgage for 80% of purchase price and balance from down payment assistance from City of New Haven." Item #3 of the agreement provided that the defendants had made an initial deposit of $500 and that they would make an additional deposit of $500 upon the Seller's acceptance "or 10/7/96 if later". The plaintiff as seller accepted the $500.00 additional deposit on October 12, 1996.
On February 3, 1997 the parties agreed to a further stay of execution to March 3, 1997. That stipulation also provided that the defendants that day had paid an additional nonrefundable deposit in the amount of $1,000.00, and that "[i]f the defendants have a mortgage commitment to purchase the premises . . . on or before March 3, 1997, then the stay can be extended through a new closing date.
The defendants have filed an application for a writ of audita querela claiming that they "received a firm mortgage commitment and produced sufficient cash to pay the difference between the mortgage commitment and the purchase price" but that "[t]he plaintiff has refused to sign a standard form for mortgages requiring FHA approval." As a result, allege the defendants, the lender has refused to order an appraisal of the property and the closing has been postponed. The defendants ask that the court "stay the enforcement of the judgment for a reasonable length of time to allow the defendants to sue the plaintiff for specific performance of the contract, and that the court make an appropriate order as to payment of use and occupancy during the pendency of such action." The plaintiff objects. CT Page 2515
 I
The plaintiff claims that the defendants may not obtain the relief they seek against the enforcement of the judgment by a writ of audita querela.[1]
"Audita querela is a common law writ that may be granted when a defense to a judgment arises for the first time after the judgment has been rendered." Oakland Heights Mobile Park, Inc. v.Simon, 40 Conn. App. 30, 31 n. 1, 668 A.2d 737 (1995). "Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him.'Wintle v. Wright, 151 Me. 212, 213-14, 117 A.2d 68 (1955)." Amesv. Sears, Roebuck Company, 206 Conn. 16, 20, 536 A.2d 563 (1988). "Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control. Ballentine's Law Dictionary (3d Ed. 1969)." Oakland HeightsMobile Park, Inc. v. Simon, supra, 40 Conn. App. 32. "Its use is most common in summary process judgments. Westfarms MallAssociates v. Kathy Johns, Inc., H-733, March 17, 1986,(Goldstein, J.); Knaus v. Lomas, 1990 Ct. Sup. 4038, November 20, 1990, H-932, November 16, 1990, (Berger, J.); Wyngate, Inc. v.Bozak, Inc., H-684, September 11, 1985, (Goldstein, J.); NormanAssociates v. Vann, H-437, August 4, 1983, (Aronson, J.); SevenFifty Main Street Associates Limited Partnership v. Spector,
H-706, November 29, 1985, (Goldstein, J.); Wheeler v. Jones,
SNBR-434, July 31, 1995, (Tierney, J.); 2 Stephenson Conn. Civ. Proc. § 209 (2d Ed)." First National Bank of Chicago v. Jansson,
Superior Court, Judicial District of Fairfield Housing Session at Bridgeport, No. SPBR-9508 30174 (July 21, 1996) (Tierney, J.).
The plaintiff claims that matters arising subsequent to the entry of a judgment cannot logically be a defense to the judgment. But see Pettit v. Seaman, 2 Root 178 (1795). In a scenario such as this, however, audita querela indeed provides "a remedy . . . in favor of one against whom execution has issued on a judgment, the enforcement of which [judgment] would be contrary to justice because of . . . matters arising subsequent to its CT Page 2516 rendition. . . ." Oakland Heights Mobile Park, Inc. v. Simon,
supra, 40 Conn. App. 32. In a case such as this, it is to the enforcement of the judgment — by way of execution — to which the writ is addressed.
Support for the defendants' utilization of the writ of audita querela is found in one of the first reported cases in Connecticut, Lothrup v. Bennet, Kirby (1786). In that case, a judgment debtor, facing an outstanding execution, paid part of the judgment to the creditor himself and the balance to the sheriff. The creditor refused to endorse payment of the portion paid to him, obtained possession of the execution and sought an alias execution for the balance claimed by the debtor to have been paid. The creditor then levied on the debtor's property. The debtor brought a bill in equity to enjoin all proceedings on the execution. The court held, in this era before the merger of law and equity, that the debtor could not maintain such an equitable proceeding because he had an adequate remedy at law by, inter alia, a writ of audita querela.
Just as the debtor in Lothrop v. Bennet, supra, claimed that the creditor had subverted his efforts to satisfy the judgment as a matter of law, so the defendants claim here. An execution here would be based on the stipulated judgment between the parties. "A stipulated judgment is a contract between the parties. . . ."State v. Phidd, 42 Conn. App. 17, 29, 681 A.2d 310 (1996), cert. denied, 238 Conn. 907, 679 A.2d 2 (1996). "Normally, a duty to satisfy a condition precedent is excused if the other party does not cooperate. E. Farnsworth, Contracts (1982) § 8.6, pp. 565-66." Christophersen v. Blount, 216 Conn. 509, 513 n. 6,582 A.2d 460 (1990). This court holds that the defendants may maintain an application for a writ of audita querela. See 7A C.J.S., Audita Querela, § 3, p. 902.
 II
Proceeding to the merits of the defendants' application, the issue is whether the plaintiff "wrongfully prevented" the defendants from performing the conditions of the judgment. Burnsv. Gould, 172 Conn. 210, 221, 374 A.2d 193 (1977) ("Certainly a defendant who has wrongfully prevented the other party from completing performance cannot set up the nonperformance of the other as a defense."); Godburn v. Meserve, 130 Conn. 723, 726,37 A.2d 235 (1944). "Where a[nother] party's breach by non-performance contributes materially to the non-occurrence of a CT Page 2517 condition of one of his duties, the non-occurrence is excused." Restatement (Second) Contracts § 245. Thus, "[a]n obligor may excuse a condition of its duty by committing a breach that causes the nonoccurrence of the condition. When the condition is excused, the obligor's duty becomes absolute." Farnsworth on Contracts § 8.6.[2] "The breach may take the form of nonperformance, either by prevention or by failure to cooperate, or it may take the form of repudiation." Farnsworth, supra, p. 380. The breach may be referable to an express term in the contract or, as is often the case, to the obligor's duty of good faith and fair dealing. See Farnsworth on Contracts § 8.6; Restatement Contracts (Second) §§ 205, 245. Connecticut recognizes that "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238,618 A.2d 501 (1992).
On or about April 2, 1997, the defendants' attorney mailed and faxed to the plaintiff's attorney an "FHA/VA ADDENDUM TO SALES CONTRACT" together with a cover letter confirming the April 30, 1997 closing and stating that it was essential that the plaintiff sign the addendum to the sales contract. There was evidence from which the court could infer that had the plaintiff signed the addendum, the lender would have issued a mortgage commitment. The addendum provides in relevant part:
 FHA APPRAISAL:
 It is expressly agreed that notwithstanding any other provision of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement lender setting forth the appraised value of the property of not less than $ __________. The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the CT Page 2518 property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.
There is no express provision in the stipulated judgment or in the purchase and sale agreement requiring the plaintiff to sign such an addendum. The issue is whether the plaintiff was bound to sign the addendum in accordance with her duty of good faith and fair dealing.
"`A promise not expressly made will not be read into the contract unless it arises by necessary implication from the provisions of the instrument.' Ives v. Willimantic,121 Conn. 408, 411, 185 A. 427 (1936)." Tomlinson v. Board of Education,226 Conn. 704, 722, 629 A.2d 333 (1993). "An implied covenant of good faith and fair dealing is [e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." EIS v.Meyer, 213 Conn. 29, 36-37, 566 A.2d 422 (1989).
Paragraph "E" of the purchase and sale agreement signed by the parties provides: "If BUYER defaults under this Agreement and SELLER is not in default, all initial and additional deposit funds provided in #3, whether or not BUYER has paid the same, shall be paid over to and retained by SELLER as liquidated damages, and both parties shall be relieved of further liability under this Agreement." In addition, the defendants had subsequently made an additional $ 1,000.00 deposit which, the parties had agreed, would be nonrefundable. Contrary to these terms, the addendum which the defendants insisted that the plaintiff sign provided that "the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement lender setting forth the appraised value of the property of not less than $ ___________." To imply a duty on the part of the plaintiff, arising out of the duty of good faith and fair dealing, to sign the addendum to the sales contract which the defendants presented would achieve a result contrary to the clearly expressed terms of the contract. See EIS v. Meyer,
CT Page 2519 supra, 213 Conn. 36-37.[3] For this reason, the plaintiff was not required to sign the addendum. This is so even though the plaintiff's motive for not signing had nothing to do with whether the defendants' deposits would be refundable; she simply did not want or need to sell the property by early 1997. Zullo v. Smith,179 Conn. 596, 601, 427 A.2d 409 (1980). "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Internal quotation marks omitted.) Levine v. Massey, 232 Conn. 272, 279, 654 A.2d 737
(1995).
Since the defendants did not obtain a mortgage commitment in accordance with the terms of the stipulated judgment as amended by the parties' February 3, 1997 stipulation, the application for a writ of audita querela is denied.
LEVIN, J.