2010 ME 19

**STATE of Maine**

v.

**Paul A. BLAKESLEY.**

Supreme Judicial Court of Maine.

Argued: Oct. 28, 2009.
Decided: March 11, 2010.

Janet T. Mills, Atty. Gen., William R. Stokes, Deputy Atty. Gen. (orally), Augusta, ME, for the state of Maine.

Leigh McCarthy, Esq., Bruce Mallonee, Esq. (orally), Rudman & Winchell, Bangor, ME, for Paul A. Blakesley.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] Current federal laws regarding immigration and naturalization may result in the deportation of noncitizen residents of the United States who have been convicted of certain crimes. This case arises from the efforts of one such noncitizen to avoid the potential deportation consequences of criminal convictions by asking the Maine courts to acknowledge or revive ancient writs in order to alter criminal convictions or sentences entered in Maine when the convictions would result in deportation. We decline to revive the writs.

[¶ 2] Paul A. Blakesley is a citizen of the United Kingdom who has been a resident of the United States since 1980, when he was five years old. In 1993, when Blakesley was nineteen years old, he was convicted of his first crime in Maine, a Class B burglary. Over the next ten years, he accumulated convictions for nine additional crimes. He is now facing possible deportation as a result of three of his ten convictions because they were drug-related or carried lengthy sentences. To avoid deportation, Blakesley has sought to have two of his convictions—those related to marijuana cultivation—vacated and has asked to be resentenced on the third conviction for burglary.

[¶ 3] Blakesley sought relief from his marijuana cultivation convictions and bur-glary sentence in the Superior Court based on the common law doctrines of *coram nobis* and *audita querela*, asserting that his convictions resulted from guilty pleas entered without court inquiry into his citizenship status or into his awareness of potential immigration consequences. The Superior Court (Kennebec County, *Jabar, J.*) granted the relief that Blakesley requested, pursuant to those writs. Specifically, the Superior Court granted Blakesley's motions for *coram nobis* and *audita querela* relief related to (1) the sentence accompanying Blakesley's 1993 conviction for burglary (Class B), 17-A M.R.S.A. § 401 (1983 & Supp.1993);[1] (2) a judgment of conviction entered in 2001 for marijuana cultivation (Class E), 17-A M.R.S.A. § 1117(2)(D) (1983 & Supp. 2001);[2] and (3) a judgment of conviction entered in 2003 for marijuana cultivation (Class D), 17-A M.R.S. § 1117(1)(B)(3) (2009).

[¶ 4] The State of Maine appeals from the Superior Court's judgment arguing that the common law writs of *coram nobis* and *audita querela* are no longer available in Maine and that, even if they were available, such relief was not justified in Blakesley's case. Blakesley argues that the State lacks the authority to appeal from the judgment granting his motions for relief. We conclude that the State's appeal is properly taken, and we vacate the judgment of the Superior Court because we hold that the common law doctrines that Blakesley asserts are no longer available in Maine.

I. BACKGROUND

[¶ 5] Paul A. Blakesley was born in the United Kingdom on October 10, 1974, un-

---

1. This statute has been amended since the time of the crime. *See* P.L. 2007, ch. 476, § 21 (codified at 17-A M.R.S. § 401 (2009)).

2. This statute was repealed and replaced after the date of Blakesley's 2001 crime and before Blakesley's 2003 crime. *See* P.L. 2001, ch. 383, § 148 (effective Jan. 31, 2003) (codified at 17-A M.R.S. § 1117(1) (2009)).

der the given name Paul A. McGruer. In 1980, he moved to the United States with his mother and stepfather, Robert Blakesley, and lawfully became a permanent resident. He has since gone by the name Paul A. Blakesley.

[¶ 6] Under that name, he was convicted of ten offenses in the State of Maine between 1993 and 2003. His convictions, in chronological order, were for burglary, theft, burglary, theft, criminal trespass, unlawful furnishing of scheduled drugs, marijuana cultivation, assault, criminal mischief, and marijuana cultivation. Seven of his convictions resulted in sentences of incarceration.

[¶ 7] Of Blakesley's ten convictions, three now give rise to immigration consequences. In 1993, Blakesley pleaded guilty in Maine to a charge of burglary, and the Superior Court (*Crowley, J.*) imposed a two-year sentence, all but fourteen days suspended, with three years of probation. In 2001, he pleaded guilty to a charge of marijuana cultivation, and the District Court (Wiscasset)[3] ordered him to pay a $300 fine plus $52 in surcharges and assessments. In 2003, Blakesley pleaded guilty to yet another charge of marijuana cultivation, and the Superior Court (Lincoln County, *Atwood, J.*) sentenced him to sixty days in prison, all but two days suspended, plus an assessment of $10. We accept Blakesley's assertion that the judgments were entered without the court inquiring of Blakesley about his citizenship status or about whether he was aware of the possible immigration consequences of pleading guilty.[4]

[¶ 8] In 2006, Blakesley applied to the Department of Homeland Security United States Citizenship and Immigration Services to replace his permanent resident card and informed the Department of the name he had been using. With this information, the Department discovered Blakesley's convictions and sought to deport him to the United Kingdom pursuant to 8 U.S.C.S. § 1227(a)(2)(B)(i) (LexisNexis 2007) (stating that an alien is deportable if he has violated "any law or regulation of a State ... relating to a controlled substance ... other than a single offense involving possession for one's own use of 30 grams or less of marijuana"), and 8 U.S.C.S. § 1227(a)(2)(A)(iii) (LexisNexis 2007) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *see also* 8 U.S.C.S. § 1101(a)(43)(G) (LexisNexis 2008) (defining "aggravated felony" to include a burglary offense for which the term of imprisonment is at least one year). As the result of an administrative process, the Executive Office of Administrative Review of the Department of Justice ordered on September 10, 2008, that Blakesley be removed to the United Kingdom. Blakesley reports to us that the Board of Immigration Appeals has affirmed that decision. He also reports that he has a petition for clemency pending before the Governor of Maine. *See* Me. Const. art. V, pt. 1, § 11; 15 M.R.S. §§ 2161–2167 (2009).

[¶ 9] In April 2009, Blakesley moved for *audita querela* relief in the Superior Court, claiming that unforeseeable conse-

---

3. The name of the judge who entered the judgment is not clear from the record.

4. In 2002, M.R.Crim. P. 11 was amended to require the court to inquire whether a defendant is a United States citizen before accepting a plea of guilty or nolo contendere. M.R.Crim. P. 11(h); M.R.Crim. P. 11 Advisory Committee's Note to 2002 amend. The

purpose of the amendment was to provide defendants an opportunity to consider the serious immigration consequences of their pleas. M.R.Crim. P. 11 Advisory Committee's Note to 2002 amend. The amendment was not intended to provide a ground for collateral attack on a plea. *Id.*

quences had arisen from his 1993 conviction for burglary, and for *coram nobis* relief in the Superior and District Courts, seeking relief from the 2001 and 2003 convictions for marijuana cultivation. He asked the court to reduce the sentence for the burglary conviction from two years to 364 days and to vacate the marijuana cultivation convictions entirely. The motions were consolidated, and the Superior Court *(Jabar, J.)* heard oral argument and took testimony from Blakesley. The court concluded that it had jurisdiction and granted the relief that Blakesley sought.

[¶ 10] The State filed a notice of appeal, and Blakesley moved to dismiss on the ground that the State lacked the statutory authority to appeal from the court's grant of relief. We ordered that Blakesley's argument for dismissal would be considered in conjunction with the merits of the State's appeal.

## II. DISCUSSION

### A. Authority of the State of Maine to Appeal

[¶ 11] In criminal matters, "the State is limited to the appeal rights granted by the plain language of [15 M.R.S. § 2115–A (2009)]." *State v. Hood,* 482 A.2d 1268, 1271 (Me.1984). Section 2115–A(2) permits appeals from "the granting of a motion for a new trial . . . or from other orders requiring a new trial or resulting in termination of the prosecution in favor of the accused."

[¶ 12] By its plain terms, this statute authorizes the State's appeal from the court's grant of *coram nobis* and *audita querela* relief in the present case. The court's judgment vacated two convictions, thus in effect granting Blakesley's request for new trials. *See* 15 M.R.S. § 2115–A(2). It also reduced his sentence for another crime, which "result[ed] in a termination of

the prosecution" in Blakesley's favor. *See id.* The State's appeal is, therefore, properly before us.

### B. Constitutional, Statutory, and Rule–Based Remedies

[¶ 13] Before we address the viability of the common law remedies of *coram nobis* and *audita querela,* we examine the safeguards that Maine has in place in its constitution, statutes, and court rules to prevent miscarriages of justice that may arise when convictions and sentences are discovered to be wrongful after the appeal period has expired. For instance:

- A person who is under a present restraint or impediment may seek relief from a criminal conviction pursuant to the provisions of the post-conviction review statutes. 15 M.R.S. §§ 2121–2132 (2009); M.R.Crim. P. 65–75A.

- In certain circumstances where new DNA testing technology could affect a conviction of a crime for which a sentence of one year or more could be imposed, the person convicted may file a motion for DNA analysis within two years after the date of conviction, or within two years after a new technology became available. *See* 15 M.R.S. §§ 2136–2138 (2009); M.R.Crim. P. 95–99.

- If new evidence is discovered within two years after the entry of judgment, a defendant may file a motion for a new trial pursuant to M.R.Crim. P. 33.

- To challenge an illegal sentence, the person who was sentenced may move for correction of the sentence within one year after the sentence was imposed. M.R.Crim. P. 35(a).

- To challenge a sentence on the basis of a mistake of fact, a person who is serving a sentence may move for re-

duction of the sentence within one year after the sentence is imposed. M.R.Crim. P. 35(c).

- If none of these judicial remedies applies in a particular case, the person convicted of a crime may seek clemency from the Governor—a function reserved to the Executive Branch as part of the constitutional balancing of powers among the three branches of government. *See* Me. Const. art. V, pt. 1, § 11; 15 M.R.S. §§ 2161–2167; *see also* Daniel J. Freed & Steven L. Chanenson, *Pardon Power and Sentencing Policy*, 13 Fed. Sent'g Rep. 119, 121 (2000–2001) (stating that the power of pardon "was designed to be the ultimate safety net").[5]

These constitutional, statutory, and rule-based authorities attempt to balance the need for finality in convictions and sentences against the need to afford those who were wrongly convicted or sentenced a means of redress to avoid a miscarriage of justice.

[¶ 14] Because Blakesley cannot be sure that he will prevail in his petition for clemency from the Governor, he seeks relief from the courts to avoid the consequences of his criminal behavior in Maine. Specifically, Blakesley asserts that the common law doctrines of *coram nobis* and *audita querela* support the Superior Court's decision to vacate two convictions and change the sentence for another to prevent Blakesley's deportation. We must, therefore, determine whether these remedies are still viable in Maine.

### C. Availability of *Coram Nobis* and *Audita Querela* Relief in Maine

[¶ 15] According to the State, both the *coram nobis* and *audita querela* remedies perished with the adoption of the post-conviction statute in 1963, leaving statutory post-conviction review as the exclusive remedy available to a person who seeks review of a conviction after the appeals process, if any, has ended. *See* 15 M.R.S. § 2124 (permitting post-conviction review only if a defendant is under a present restraint or impediment). Thus, the State argues that the Superior Court lacked jurisdiction to afford Blakesley the relief he sought.

[¶ 16] Maine inherited the remedies of *coram nobis* and *audita querela* from Massachusetts by virtue of article X, section 3 of the Maine Constitution, which states, "All laws now in force in this State, and not repugnant to this Constitution, shall remain, and be in force, until altered or repealed by the Legislature, or shall expire by their own limitation." *See Dwyer v. State*, 151 Me. 382, 392, 120 A.2d 276, 282 (1956). These remedies were originally asserted by civil writ but came to be asserted by motion instead. *See Penobscot R.R. Co. v. Weeks*, 52 Me. 456, 461 (1864).

[¶ 17] A party asserted a writ or motion of *coram nobis*, derived from the Latin *quae coram nobis resident* ("which remain with us"), to request that the court that issued a judgment correct the record because, if the court had been aware of

---

**5.** We are not authorized by Maine's constitution, statutes, or court rules, to afford Blakesley the relief of a full pardon or commutation, *see State v. Blanchard*, 156 Me. 30, 42, 159 A.2d 304, 310–11 (1960) (stating that a court cannot, after sentencing, effect a cancellation, reprieve, or pardon of the offender out of leniency); *see also* Elizabeth Rapaport, *The Georgia Immigration Pardons: A Case Study in Mass Clemency*, 13 Fed. Sent'g Rep. 184 (2000–2001) (reporting on 138 pardons granted in Georgia to immigrants who had been convicted of misdemeanors that later resulted in deportation consequences as a result of 1996 changes in immigration law).

certain facts that existed at the time of the judgment, the court would not have entered the judgment. *Dwyer*, 151 Me. at 389, 120 A.2d at 280–81. The remedy, which was designed to address the results of errors of *fact*, not errors of *law* in the court's actions, *id.*, has been applied in criminal cases, *see Duncan v. Robbins*, 159 Me. 339, 193 A.2d 362 (1963).[6]

[¶ 18] A writ or motion of *audita querela* has been described as "a remedial process to relieve a party who has been injured or who is in danger of being injured from the consequences of a judgment because of some improper action of the party who obtained it which could not have been pleaded in bar to the action." *Wintle v. Wright*, 151 Me. 212, 213, 117 A.2d 68, 69 (1955) (quotation marks omitted). The remedy was primarily used by debtors in civil collection-related cases who were arrested, or in danger of being arrested, on execution of the judgment; the remedy enabled them to assert that the debt had been paid or released. *Id.* at 213–14, 117 A.2d at 70.

[¶ 19] As of 1956, the common law remedy of *coram nobis* was available in Maine because no statute had been enacted to prohibit, limit, or prevent its use. *Dwyer*, 151 Me. at 392–93, 120 A.2d at 282–83. The use of the remedy in civil cases was abolished in 1959 when we adopted M.R. Civ. P. 60(b) to govern relief from judgment. *See Willette v. Umhoeffer*, 245 A.2d 540, 541 (Me.1968). The remedy was not abolished for criminal cases at that time, however. M.R. Civ. P. 60 reporter's note.

[¶ 20] In 1961, the *coram nobis* remedy was codified as it pertained to criminal matters. P.L. 1961, ch. 131 (effective Sept. 16, 1961). Approximately two years later, the Legislature adopted the post-conviction review statute. P.L. 1963, ch. 310 (effective Sept. 21, 1963). This legislation simultaneously repealed the 1961 *coram nobis* statute. *Id.* § 5.

[¶ 21] When the post-conviction review statute took effect, *coram nobis* relief became altogether unavailable:

> [T]he common law writ of error coram nobis recognized as available to a petitioner under custodial restraint in *Dwyer*[, 151 Me. 382, 120 A.2d 276] ceased to exist when it was superseded by the "coram nobis" statute enacted by the Legislature in P.L. 1961, Ch. 131. This statute, then R.S. 1954, Ch. 126–A, was in turn repealed by Sec. 5 of P.L. 1963, Ch. 310, the chapter which simultaneously enacted the post-conviction relief statute in its present form.

*Thoresen v. State*, 239 A.2d 654, 655 (Me. 1968) (citation omitted).

[¶ 22] Similarly, the common law doctrine of *audita querela* was codified in statute and later repealed. *See* R.S. ch. 127 (1954); P.L. 1959, ch. 317, § 279 (effective Dec. 1, 1959). The statute's repeal was contemporaneous with the adoption of Rule 60(b) of the Maine Rules of Civil Procedure. M.R. Civ. P. 60 reporter's note. The reporter's notes to the rule left open the possibility that the remedy of *audita querela* would be available in criminal cases. *See id.*

[¶ 23] Through the enactment of the original post-conviction review mechanism in 1963 and the revisions enacted in 1980, however, the Legislature created "a single, unified system of post-conviction relief, replacing the procedural complexities of the past." *Fernald v. Me. State Parole Bd.*, 447 A.2d 1236, 1239 (Me.1982). Thus, al-

---

6. The opinion in *Duncan v. Robbins*, 159 Me. 339, 193 A.2d 362 (1963), was issued in August 1963, before the post-conviction review statute took effect. *See* P.L. 1963, ch. 310 (effective Sept. 21, 1963).

though *audita querela* relief may have been available in criminal matters before the advent of the post-conviction review statute, it was abolished entirely by the post-conviction review statute. *Id.* Accordingly, the "procedural complexities" of *coram nobis* and *audita querela* motions have been abolished in Maine. *See id.*; P.L. 1963, ch. 310 (effective Sept. 21, 1963); *see also* 15 M.R.S. § 2122 (stating that post-conviction review "replaces . . . the remedies available pursuant to . . . coram nobis . . . and any other previous common law or statutory method of review").

[¶ 24] Anticipating this result, Blakesley asks us to revive the writs by judicial fiat. We will not revive abolished remedies or create new remedies when the Legislature has explicitly precluded the use of the old writs by creating a system of post-conviction relief.[7] *See State v. Ngo,* 2007 ME 2, ¶ 6, 912 A.2d 1224, 1226 (holding that M.R.Crim. P. 1(c) did not provide an alternative remedy when the defendant failed to challenge his conviction through the statutory post-conviction process). Federal jurisprudence similarly recognizes the importance of honoring legislatively created structures governing the post-conviction review process. *See United States v. Crowell,* 374 F.3d 790, 795 (9th Cir.2004) ("Proper regard for Congress and its careful and ongoing attention to post-conviction remedies demands that we not alter this scheme and enlarge our own power by the creation of new post-conviction remedies."); *United States v. Valdez–Pacheco,* 237 F.3d 1077, 1080 (9th Cir.2001) ("A prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs.").

[¶ 25] Because the common law remedies of *coram nobis* and *audita querela* are no longer available in Maine,[8] we must vacate the judgment of the Superior Court and remand for the denial of Blakesley's motions for relief.[9] *See, e.g., Ngo,* 2007 ME 2, ¶ 6, 912 A.2d at 1226; *Fernald,* 447 A.2d at 1239 (directing the dismissal of an administrative appeal because post-conviction review was the exclusive mode for a

---

7. We are not called upon here to determine whether post-conviction relief might be available through either a reinterpretation of "present restraint" or a facial constitutional challenge to post-conviction limitations.

8. In reaching our decision, we are mindful that *coram nobis* and *audita querela* relief have remained available in limited circumstances in some federal courts. *See United States v. Morgan,* 346 U.S. 502, 511–13, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (*coram nobis* ); *United States v. Ghebreziabher,* 701 F.Supp. 115, 117 (E.D.La.1988) (*audita querela*); *see also Doe v. INS,* 120 F.3d 200, 204 (9th Cir. 1997) (holding that recasting *audita querela* as a means of obtaining purely equitable relief would violate the separation of powers); *United States v. Johnson,* 962 F.2d 579, 582 (7th Cir.1992) (holding that vacating a judgment pursuant to *audita querela* on purely equitable grounds "amounts to an end run around properly enacted immigration legisla-

tion and essentially rewrites [the legislation]"). Federal cases are unpersuasive on the question at issue here, however, because although the All Writs Act authorizes federal courts to issue necessary writs, *see* 28 U.S.C.S. § 1651(a) (LexisNexis 2003), Maine does not have such a statute to confer on its courts the authority to grant writs.

9. We distinguish Blakesley's requests for relief from the relief sought in *Aldus v. State,* 2000 ME 47, 748 A.2d 463, because (1) Aldus sought statutory post-conviction relief, not common law relief, and (2) Aldus asserted ineffective assistance of counsel because her attorney was aware of her immigration issues but failed to further investigate or move for additional time to look into her immigration issues before entering a plea, whereas Blakesley failed to inform his attorneys of his citizenship status altogether. *Id.* ¶¶ 6, 11, 748 A.2d at 466, 467.

court to review the Parole Board's refusal to discharge his sentence).

[¶ 26] We acknowledge the possibility that, because of our holding today, Blakesley may ultimately be deported if his petition for clemency is denied and he exhausts the federal appeal process without success. This would be a consequence of valid final judgments of conviction entered legally, upon due process. *See Ngo v. State,* 2008 ME 71, ¶ 16, 946 A.2d 424, 430 (stating that the immigration consequences of a state conviction are collateral consequences, not additional punishment); *Wellman v. State,* 588 A.2d 1178, 1180–81 (Me. 1991) (holding that a court need not inform a defendant of each and every collateral consequence of his plea for the plea to have been made voluntarily).

[¶ 27] Valid criminal convictions such as these are not trivial matters. Many consequences can flow from the conviction of a crime. For example, those who have been convicted of crimes may be unable to secure certain employment, *see* 5 U.S.C.S. § 2302(b)(10) (LexisNexis Supp. 2009); may be disqualified from occupational licensing, *see* 5 M.R.S. §§ 5301–5303 (2009); and may be unable to obtain certain types of federal benefits for which they would otherwise qualify, *see* 21 U.S.C.S. § 862 (LexisNexis 2002), including federal student loans, *see* 20 U.S.C.S. § 1091(r) (LexisNexis 2009), and public housing benefits, *see* 42 U.S.C.S. § 1437d(*l*)(4)(A)(ii), (6) (LexisNexis 2000 & Supp. 2009).

[¶ 28] A criminal conviction may also result in the forfeiture of property, *see* 21 U.S.C.S. § 881 (LexisNexis 2002); *see also* 15 M.R.S. § 5826 (2009) (criminal forfeiture); 17–A M.R.S. § 1158–A (2009) (firearms forfeiture), or affect a person's right to possess firearms, *see* 15 M.R.S. § 393 (2009). Convictions of certain crimes can also affect the evaluation of a child's best interest when a court determines parental rights and responsibilities in a family matter, *see* 19–A M.R.S. § 1653(3)(Q), (R), (6–A), (6–B) (2009), or create a presumption of jeopardy in a child protection proceeding, *see* 22 M.R.S. § 4035(2–A) (2009).

[¶ 29] As these examples demonstrate, significant collateral consequences can arise from a criminal conviction, which is a reality that each person accused of a crime must consider when facing charges in court. If the laws of the United States require Blakesley's deportation to the United Kingdom due to three of his ten criminal convictions in Maine, and the Governor declines to grant clemency, this result is a matter of policy properly determined by the United States Congress.[10] Deportation is one of many difficult collateral consequences that can lawfully flow from a person's criminal convictions. Accordingly, notwithstanding the possibility that Blakesley may face this outcome, we adhere to the legislatively crafted postconviction statute and leave to the federal courts, the Governor of Maine, and potentially, the United States Congress, the determinations that will ultimately decide Blakesley's fate.

The entry is:

Judgment vacated. Remanded for denial of Blakesley's motions for *coram nobis* and *audita querela* relief.

---

10. *Cf. United States v. Holder,* 936 F.2d 1, 5–6 (1st Cir.1991) (holding that, although *audita querela* relief might be available in federal court in some circumstances, a court may not disrupt a valid conviction on the sole basis that deportation consequences are distasteful).